## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LAWRENCE BEVILLE, Aryne Randall, and Scott Kuhn, on behalf of the Wells Fargo & Company 401(k) Plan and a class of similarly situated participants of the Plan, | )<br>)<br>)<br>)<br>) |
| | ) Case No. _____ |
| Plaintiffs, | ) CLASS ACTION |
| v. | ) COMPLAINT |
| | ) |
| GREATBANC TRUST COMPANY, Wells Fargo & Co., Timothy J. Sloan, and the Employee Benefit Review Committee, and its members during the proposed class period, including Hope Hardison, Justin Thornton, and Jane and John Does 1–20. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs Lawrence Beville, Aryne Randall, and Scott Kuhn ("Plaintiffs"), by their undersigned attorneys, individually and on behalf of a class of similarly situated participants ("the Class") in the Wells Fargo & Company 401(k) Plan (the "Plan"), and on behalf of the Plan, bring this action for breach of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), upon personal knowledge, the investigation of their counsel, and their counsel's knowledge and experience of ERISA and employee stock ownership plans ("ESOPs"), against Defendants GreatBanc Trust Company ("GreatBanc"), Wells Fargo & Co. ("Wells Fargo"), Timothy J. Sloan, and the Employee Benefit Review Committee, and its members during the proposed class

1

period, including Hope Hardison, Justin Thornton, Timothy J. Sloan, and members not currently known to Plaintiffs ("Jane and John Does 1–20").

## I.   INTRODUCTION

1.     This is a civil enforcement action under Sections 502(a)(2) and (a)(3) of ERISA. 29 U.S.C. §§ 1132(a)(2), (3).

2.     This suit is about corporate self-dealing at the expense of the retirement savings of company employees. All Defendants are fiduciaries of the Plan, required by ERISA to act prudently and solely in the interest of the Plan's participants.

3.     Over the course of many years, Defendants caused the Plan to pay more than fair market value when acquiring Wells Fargo preferred stock ("Preferred Stock") for the ESOP portion of the Plan. Each year, going back to at least 2007, up to and including 2018, the Plan acquired Preferred Stock financed by a loan from Wells Fargo. For example, in 2018 the Plan acquired 1,100,000 shares of Preferred Stock with a stated value of $1,039.00 a share, for a total value of $1,142,900,000.

4.     The terms of the loan required the Plan to use Preferred Stock dividends to pay the principal and interest. But the dividend income from Preferred Stock owned by the Plan vastly exceeded the amounts paid on the loans by tens of millions, sometimes hundreds of millions, a year. Wells Fargo took the excess dividend income and used it to meet its employer matching

contribution obligations, which contributions were a contractual and ERISA liability of Wells Fargo. In short, the excess dividend income was used for the benefit of Wells Fargo, not for the benefit of the Plan and its participants and beneficiaries.

5.     ERISA fiduciaries are bound to act with an "eye single" to the interest of the plan participants and beneficiaries to whom they owe a duty. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982). Defendants in this case violated that bedrock principle by favoring the economic interest of Wells Fargo over those of the Plan and its participants, to whom they owe the highest duties known to the law.

6.     In addition, ERISA requires that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries. ERISA § 403(c), 29 U.S.C. § 1103(c). Defendants violated this fundamental rule for ERISA trusts by using Plan assets to subsidize Wells Fargo's matching contributions to the Plan.

7.     Preferred Stock is not readily traded on a public market. Therefore, the value of Preferred Stock must be determined under the "adequate consideration" standard, which, in the case of an asset other than a security for which there is a generally recognized market, is defined as the

fair market value as of the date of the transaction. ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B).

8. When valuing Preferred Stock, Defendants, among other things, factored the projected income from Preferred Stock dividends into the fair market value of the stock.

9. But Wells Fargo used the dividend income from Preferred Stock to make its contractually obligated employer matching contributions to the Plan. In other words, the Plan paid for a dividend that it did not and would not receive because Wells Fargo, with the knowledge and approval of the other Defendants, used the dividends to satisfy its employer contribution obligations under ERISA and the Plan.

10. Defendants knew Wells Fargo was diverting dividend income from the Plan and therefore caused the Plan to pay more than fair market value each time it acquired Preferred Stock because the fair market value agreed to by GreatBanc, Wells Fargo, and Sloan included a future stream of dividend payments which they knew would not be received by the Plan or used for the benefit of the participants and beneficiaries, but instead would be diverted to defray Well Fargo's obligation to make matching contributions to the Plan.

11. Wells Fargo, with the knowledge and consent of the other Defendants, converted Plan assets for its own use in blatant violation of

ERISA's prohibited transaction provisions. This was theft of participants' retirement savings, an important part of their compensation package.

## II.   JURSIDICTION AND VENUE

12.   This court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).

13.   ERISA permits an action in a district where the plan is administered, where the breach took place, of where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2).

14.   Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because, on information and belief, the Plan contains a forum selection clause requiring this venue.

15.   This Court has personal jurisdiction over Wells Fargo because it transacts business in, employs people, and has significant contacts within this District, and because ERISA provides for nationwide service of process.

16.   This Court has personal jurisdiction over the Employee Benefit Review Committee and its members because it transacts business in and has significant contacts within this District, and because ERISA provides for nationwide service of process.

17.   This Court has personal jurisdiction over GreatBanc because it transacts business in and has significant contacts within this District, and because ERISA provides for nationwide service of process.

## III.   PARTIES

### A.   Plaintiffs

18.   Plaintiff Lawrence ("Larry") Beville was an employee of Wells Fargo for approximately 14 years and resides in Fenton, Missouri.

19.   Plaintiff Aryne Randall was an employee of Wells Fargo for approximately 26 years and resides in Big Lake, Alaska.

20.   Plaintiff Scott Kuhn was an employee of Wells Fargo for approximately 10 years and resides in Lancaster, Pennsylvania.

21.   Each Plaintiff is a participant in the Plan because each of them is an active participant in the Plan or has a colorable claim to additional benefits under the Plan.

22.   Each Plaintiff was or is invested in Wells Fargo common stock ("Common Stock") through his or her account in the Plan. Each Plaintiff received allocations of Common Stock to their accounts in the Plan during the Class Period when Preferred Stock was converted to Common Stock and allocated to them.

23.   Plaintiffs, like substantially all Plan participants, were not provided any information regarding the substance of deliberations, if any, of the Employee Benefit Review Committee, concerning the Plan's investment in Wells Fargo Preferred Stock, the valuation of Wells Fargo Preferred Stock,

or the treatment of dividends earned on Wells Fargo Preferred Stock held within the Plan during the Class Period.

### B.   Defendants

24.   Every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). Further, a person who functions as a fiduciary is a fiduciary, even if they are not named as such, so long as the person exercises any discretionary authority or control over the administration of the plan or any authority or control over the disposition of plan assets. 29 U.D.C. § 1001(21)(A).

25.   Defendants Wells Fargo & Co. ("Wells Fargo") is a Delaware company with its principal place of business located at 420 Montgomery St., San Francisco, CA 94104. Wells Fargo and its affiliates provide diversified financial services, including wholesale banking, mortgage banking, consumer finance, equipment leasing, agricultural finance, commercial finance, securities brokerage and investment banking, consumer and data processing services, trust services, investment advisory services, mortgage-backed securities servicing and venture capital investment.

26.   Defendant Wells Fargo is the Plan Sponsor within the meaning of 29 U.S.C. § 1002(16)(B).

27.     Defendant Wells Fargo is a party in interest to the Plan within the meaning of 29 U.S.C. § 1002(14) because, among other things, it is an employer whose employees are covered by the Plan.

28.     Wells Fargo was a fiduciary for the Plan because it had discretion under the terms of the ESOP loans and the Plan to use all dividends to pay ESOP notes.

29.     Wells Fargo also functioned as a fiduciary to the Plan where, as detailed herein, it exercised discretion and control over Plan assets by unlawfully taking dividend payments belonging to the Plan and used the money to satisfy its liabilities.

30.     Defendant Timothy J. Sloan was the Chief Executive Officer of Wells Fargo from October 2016 to March 2019.

31.     Sloan resigned in 2019 under pressure arising from the fraudulent account scandal where Wells Fargo created millions of fraudulent bank accounts on behalf of Wells Fargo clients without their consent.

32.     On October 12, 2016, Wells Fargo's board designated Sloan as the sole member of the Board's ESOP Committee. The ESOP Committee decides whether, when, and under what terms to issue Preferred Stock to the Plan in exchange for notes issued by the Plan to Wells Fargo. Sloan was the sole member of the ESOP Committee for the 2017 and 2018 transactions between the Plan and Wells Fargo in Preferred Stock.

8

33.    Sloan knew or should have known the Plan paid more than fair market value for Preferred Stock because he knew dividends exceeding minimum loan payments would be used to defray Wells Fargo's employer matching liabilities instead of inuring to the benefit of the Plan, even though such dividends were impounded into the fair market value conclusion made by GreatBanc. In addition, Sloan knew that the Plan paid Wells Fargo more than $1,000 per share of Preferred Stock while giving the Wells Fargo the right to redeem the stock at any time for $1,000 per share.

34.    As CEO of Wells Fargo, Sloan was a party in interest to the Plan, as defined in 29 U.S.C. § 1002(14).

35.    As CEO and President of Wells Fargo, Sloan had discretion under the terms of the Plan to apply dividends exceeding required loan payments on ESOP loans to make additional principal payments on such loans. This gave Sloan discretionary control over Plan assets.

36.    Defendant Employee Benefit Review Committee (the "Committee") is a named fiduciary within the meaning of 29 U.S.C. § 1102(a) with the authority to manage the assets of the Plan.

37.    Defendants Hardison, Thornton, Sloan, and unknown members, "John and Jane Does 1–20" were or are members of the Committee during the relevant period. At the time the Complaint was filed, Plaintiffs do not

know the identity of the Plan's fiduciaries who served on the Committee other than Hardison, Thornton and Sloan.

38.     The Committee and its individual members during the Class Period are collectively referred to as the "Committee Defendants".

39.     The Committee Defendants were responsible for selecting and monitoring the investments of the Plan during the Class Period.

40.     As such, during the Class Period, the Committee Defendants were/are fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i) because they (1) exercised discretionary authority or discretionary control respecting management of the Plan and (2) exercised authority or control respecting management or disposition of its assets.

41.     Defendant GreatBanc Trust Company ("GreatBanc") was at all relevant times a fiduciary for the ESOP Fund of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because it was appointed by the Company to act as a named fiduciary/trustee for purposes of the provision of the ESOP Fund through the ESOP provisions of the Plan. It exercised discretionary authority or discretionary control respecting management of the Fund, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP component of the Plan. GreatBanc was at all relevant times a person providing services to the Plan. GreatBanc was at all

relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A).

GreatBanc's headquarters is located at 801 Warrenville Road, Suite 500,

Lisle, Illinois 60532.

42.     GreatBanc was engaged by the Company to act as a discretionary

trustee to the Plan with respect to the ESOP components of the Plan,

including the Plan's purchase or sale of Preferred Stock.

43.     GreatBanc is a subsidiary of U.S. Fiduciary Services, Inc., which

is also headquartered at 801 Warrenville Road, Suite 500, Lisle, Illinois

60532.

## IV.   FACTS

### A.   The Plan

44.     The Plan is a tax-qualified defined contribution retirement plan

subject to the provisions of ERISA. At all relevant times, the Plan was an

"employee pension benefit plan" within the meaning of 29 U.S.C. §

1002(2)(A), and included the ESOP Fund, which was a leveraged ESOP, in

that the ESOP Fund borrowed funds from Wells Fargo to purchase the

Preferred Stock.

45.     Wells Fargo is the sponsor of the Plan.

46.     The Plan provides an opportunity for Wells Fargo employees to

save for retirement and provide retirement income.

47.     The Plan covers eligible employees of Wells Fargo, including all subsidiaries of Wells Fargo with U.S.-based employees.

48.     As of December 31, 2018, the Plan had approximately $40.8 billion in assets and 324,314 participants with account balances. Each year, thousands of Wells Fargo employees contribute, on average and in the aggregate, over $1.5 billion of their income to the Plan.

49.     The Plan's benefits are funded by participants' voluntary tax-deferred contributions and by employer matching contributions.

50.     The value of each participant's individual account in the Plan depends on deferrals of employee compensation, employer matching contributions, other employer contributions, the performance of investment options net of fees and expenses, and dividends on Common Stock.

51.     Participants can only invest in the fund options selected for the Plan by the Committee Defendants.

52.     During the Class Period, the Plan was governed by various plan instruments, including the Wells Fargo & Company 401(k) Plan Trust Agreement (As Amended and Restated Effective January 1, 2016) (the "2016 Trust Agreement"), and the Wells Fargo & Company 401(k) Plan (As Amended and Restated Effective January 1, 2020) (the "2020 Plan Document").

53.     Section 8.1 of the 2016 Trust Agreement required, among other things, that "No part of the corpus or income of the Trust Fund may be used for, or diverted to, purposes other than for the exclusive benefit of Participants or payment of Plan expenses; and no amendment shall be effective if it causes such diversion."

54.     Likewise, Section 11.5 of the 2020 Plan Document requires that "The Trust Fund shall be for the exclusive purpose of providing benefits to Participants under the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan…. No part of the corpus or income of the Trust Fund may be used for, or delivered to, purposes other than for the exclusive benefit of employees of the Participating Employers and their beneficiaries."

### B.   The Wells Fargo Stock Funds.

55.     Before July 27, 2018, employer matching contributions were automatically invested in the Wells Fargo ESOP Fund or the Wells Fargo Non-ESOP Fund. Effective July 27, 2018, the Non-ESOP Fund was eliminated. Both funds primarily invested in the Company's stock. Discretionary profit-sharing contributions were also made from time to time, and automatically placed in the Wells Fargo ESOP Fund.

56.     The Wells Fargo Non-ESOP Fund invested in Common Stock.

13

57.     The Wells Fargo ESOP Fund invested in Wells Fargo Common and Preferred Stock.

58.     The ESOP Fund acquired Preferred Stock through loans to the Plan by Wells Fargo. Each year through 2018, ESOP Convertible Preferred Stock Notes were issued in amounts exceeding $100 million per year and a commensurate value of Preferred Stock was acquired from Wells Fargo by the ESOP Fund.

59.     In 2017 the Plan acquired 950,000 shares of Preferred Stock with a stated value of $1,033.00 a share, for a total transaction value of $981,350,000.

60.     In 2018 the Plan acquired 1,100,000 shares of Preferred Stock with a stated value of $1,039.00 a share, for a total transaction value of $1,142,900,000.

61.     When the Plan makes principal payments on ESOP notes, the Plan's Preferred Stock is converted to Common Stock and allocated to participant accounts.

62.     When Wells Fargo makes its employer matching contribution, Common Stock equal in value to the value of the matching contribution is allocated to participants' accounts in the ESOP Fund (and/or the Non-ESOP Fund prior to July 27, 2018).

63.    The Company's matching contributions are held in a sub-account of a participant's account in the Plan called the participant employer contribution account.

64.    Until July 27, 2018, dividends on Common Stock allocated to participant accounts was automatically reinvested in Common Stock.

65.    After July 26, 2018, dividends on Common Stock allocated to participant accounts was automatically reinvested in Common Stock instead of being paid in cash if a participant did not elect to receive cash.

66.    Dividends on unallocated shares, that is Common and Preferred Stock not allocated to participant accounts, are applied to make payments on ESOP loans.

67.    Dividends on allocated Common Stock in participant employer contribution accounts that are reinvested are applied to make payments on ESOP loans.

68.    Dividends on nonvested Common Stock in participant accounts are applied to make payments on ESOP loans.

69.    When dividends applied to payments on ESOP loans exceed a threshold, the excess dividends are reclassified as employer contributions and Wells Fargo contributes the equivalent value of Common Stock to participant accounts.

C.   **Defendants Caused the Plan to Pay More than Fair Market Value for Wells Fargo Stock in The Plan and Converted Plan Assets for Wells Fargo's Use.**

70.   Because Preferred Stock is not readily tradeable on a public market, ERISA requires the stock be valued under the fair market value standard as of the transaction date, here the date of the annual loans and contemporaneous acquisitions of Preferred Stock. ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B).

71.   When valuing Preferred Stock, GreatBanc included the future dividend income, discounted to present value. Thus, GreatBanc caused the Plan to pay for employer stock based on the market value of Common Stock plus the present value of future dividends on Preferred Stock, among other things.

72.   The ESOP Fund's Preferred Stock paid quarterly dividends each year of the Class Period. The ESOP Fund's and Non-ESOP-Fund's Common Stock also paid quarterly dividends. Dividends were first applied to offset the Plan's ESOP loan payments up to a certain threshold. Excess dividends were "reclassified" as employer contributions and used to offset Wells Fargo's contractual and ERISA-mandated employer contribution obligations.

73.   However, all the dividend income, including the reclassified dividend income, belonged to the Plan and its participants. The Plan paid for the dividend income when it acquired Preferred Stock because the price paid

by the Plan included the present value of projected dividend income in the fair market value analysis. Plan participants were entitled to the full dividends on Common Stock allocated to their accounts.

74.     In 2017, reclassified dividends were $125.2 million.

75.     In 2018, reclassified dividends were $42.9 million.

76.     In 2019, reclassified dividends were $233.4 million.

77.     Total reported reclassified dividends during the Class Period were $401.5 million. It is unknown to Plaintiffs whether dividends were reclassified in 2021 and 2022.

78.     A U.S. Department of Labor ("DOL") investigation covering the period 2013–2018, found that "those responsible for Wells Fargo's 401(k) plan paid more than fair market value for employer stock and, by doing so, betrayed the trust of the plan's current and future retirees."

79.     As a result of the DOL investigation, Wells Fargo agreed to pay a penalty to the DOL of almost $13.2 million. Wells Fargo and GreatBanc also agreed to pay plan participants over $131.8 million. The $131.8 million collected by the DOL for 2012–2018 is far less than the $401.5 million in reclassified dividend payments taken from the Plan by Wells Fargo from 2017–2019.

17

80.    Although always converting Preferred Shares for $1,000 worth of Common Stock, Defendants reported the Fair Market Value of Preferred Shares as:

| End of Year | Preferred Stock Units | Preferred Stock Reported Value | Per-Unit Value |
|---|---|---|---|
| 2016 | 1,439,181 | $1,712,154,012 | $1,189.67 |
| 2017 | 1,774,652 | $2,054,946,114 | $1,157.94 |
| 2018 | 1,623,903 | $1,802,375,680 | $1,109.90 |
| 2019 | 1,071,418 | $1,231,374,393 | $1,149.29 |
| 2020 | 822,242 | $989,631,427 | $1,203.58 |

81.    The Plan converted Preferred Stock for $1,000 per Preferred Share worth of Wells Fargo Common Stock during the Class Period. However, during the entire Class Period, Defendants reported that each share of Preferred Stock was worth more than $1,000. If, *assuming arguendo*, Defendants' reported value of Preferred Stock was correct, then the Plan did not receive fair market value for conversion of Wells Fargo Preferred Stock to Common Stock.

**D.**     **Defendants Harmed Plaintiffs and Other Class Members.**

82.     Defendants harmed Plaintiffs and other Class Members in several ways.

83.     First, by causing the Plan to pay more than fair market value for Preferred Stock, the Plan took on liabilities, the ESOP notes, that exceeded the fair market value of the principal on those notes. This means the Plan paid too much interest on the principal. Because both the principal and the interest were inflated, when Preferred Stock was converted to common and allocated to participant accounts, less Preferred Stock was converted than would have been the case had the Plan paid fair market value for the preferred shares and participants received fewer shares of Common Stock.

84.     Second, when Wells Fargo took the Plan's Preferred Stock dividends, the reclassified dividends, and used them to offset its employer matching contributions, participants received less Common Stock than they would have otherwise received. Had all the dividends been used to pay ESOP notes, the Plan and its participants would have received many more shares of Common Stock when more Preferred Stock was converted to Common Stock and allocated to participant accounts. Further, Wells Fargo would have had to pay its employer matching contributions from its own account, yielding yet more Common Stock (or cash) allocated to participant accounts (but paid for by Wells Fargo instead of the Plan and participants). Thus, had Wells Fargo

not taken dividends for its own use, participants would have received an additional $125.2 million worth of Common Stock (or cash) in 2017, an additional $42.9 million worth of Common Stock (or cash) in 2018, and an additional $233.4 million worth of Common Stock (or cash) in 2019.

85.     Third, Wells Fargo took dividends on Common Stock allocated to participant accounts and used such dividends to offset its employer matching contributions. In other words, Plaintiffs and other participants paid, in part, for the matching contribution that Wells Fargo owed them for their service to the company.

86.     Wells Fargo stole from the Plan and its own employees, and GreatBanc, which was charged with protecting the participants' interests, aided and abetted this theft.

## V.     ERISA'S FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS

87.     ERISA § 403(c)(1) provides that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. 29 § 1103(c)(1).

88.     ERISA imposes strict fiduciary duties of loyalty and prudence
upon Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C.§
1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)     for the exclusive purpose of:
>
> (i)     providing benefits to participants and their beneficiaries; and
>
> (ii)     defraying reasonable expenses of administering the plan; [and]
>
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims…
>
> (D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].

89.     ERISA also imposes co-fiduciary duties on plan fiduciaries.
ERISA § 405, 29 U.S.C. § 1105, states in relevant part that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

90. The duties of prudence and loyalty under ERISA are derived from the common law of trusts.

91. The general duties of loyalty and prudence imposed by ERISA §404, 29 U.S.C. §1104, are supplemented by a detailed list of transactions that are expressly prohibited by ERISA § 406, 29 U.S.C. §1106, and are considered "per se" violations because they entail a high potential for abuse. Section 1106(a)(1) states, in pertinent part, that:

[A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect —

(A) sale or exchange… between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

Section 1106(b) provides, in pertinent part, that:

[A] fiduciary with respect to the plan shall not —

(1) deal with the asset of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

92.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409, 29 U.S.C. § 1109, further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

93.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides a claim for relief against a party in interest who knowingly participates in a breach of duty or prohibited transaction.

## VI.   CLASS ALLEGATIONS

94.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit individually on behalf of the Plan to recover for the Plan the remedies provided under ERISA § 409, 29 U.S.C. § 1109(a).

95.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29

U.S.C. § 1132(a)(2) and (3), Plaintiffs seek to certify this action as a class

action on behalf of:

> All participants in the Wells Fargo & Co. 401(k) Plan from
> September 27, 2016 to the date of judgment (the "Class Period"),
> who held any portion of their Plan accounts, at any time during
> the Class Period, in the Wells Fargo ESOP Fund. Excluded from
> the class are individual Defendants, individual Defendants'
> beneficiaries, individual Defendants' immediate families, and
> officers and directors of Wells Fargo.

96.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and

(b)(1), (b)(2), and/or (b)(3).

(a)    The class satisfies the numerosity requirement of Rule 23(a)

because it is composed of thousands of persons, in numerous locations. The

number of class members is so large that joinder of all its members is

impracticable.

(b)    The class satisfies the commonality requirement of Rule 23(a)

because there are questions of law and fact common to the Class and these

questions have common answers. Common legal and factual questions

include, but are not limited to: who are the fiduciaries liable for the remedies

provided by ERISA § 409(a), 29 U.S.C. §1109(a); whether the fiduciaries of

the Plan breached their fiduciary duties and engaged in prohibited

transactions when they caused the Plan by to invest in Preferred Stock;

whether Defendants caused the Plan to pay more than fair market value for

Preferred Stock; whether Wells Fargo unlawfully converted dividend

payments owed to the Plan and participants to its own use; the losses to the Plan, including prejudgment interest, from Defendants' violations of ERISA.

(c)     The class satisfies the typicality requirement of Rule 23(a) because Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiffs held Wells Fargo stock in the ESOP Fund during the Class Period.

(d)     The class satisfies the adequacy requirement of Rule 23(a). Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation, including ESOP matters. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in managing this lawsuit as a class action.

(e)     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would

25

create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(f)      In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

(g)      In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VII.   CLAIMS FOR RELIEF

### First Claim For Relief Against GreatBanc:
### Prohibited Transactions

97.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.    GreatBanc was the trustee for the ESOP Fund of the Plan.

99.    GreatBanc was responsible for ensuring the Plan paid no more than fair market value for Wells Fargo Preferred Stock.

100.   GreatBanc determined the fair market value of Preferred Stock the Plan purchased from Wells Fargo.

101.   Wells Fargo, a party in interest, was the counter-party in Preferred Stock transactions with the Plan.

102.   GreatBanc's fair market value determinations for Preferred Stock included future dividend payments discounted to present value.

103.   GreatBanc knew that a material portion of future dividend payments would be used to defray Wells Fargo's liabilities for plan contributions instead of inuring to the benefit of the Plan.

104.   GreatBanc caused the Plan to pay for future dividend income the Plan would never receive.

105.   GreatBanc caused the Plan to repeatedly pay more than fair market value for Preferred Stock.

106.   By engaging in this conduct, GreatBanc caused the Plan to engage in multiple prohibited transactions.

107.   GreatBanc violated ERISA's prohibited transaction rules by causing the Plan to engage in prohibited transactions with Wells Fargo, including:

   a. Prohibited transactions with parties in interest involving the sale of property, here Preferred Stock, by a party in interest to the Plan. 29 U.S.C. § 1106(a)(1)(A).

27

b. Prohibited transactions involving the lending of money or other extension of credit between the Plan and a party in interest, here the ESOP loans between Wells Fargo and the Plan. 29 U.S.C. § 1106(a)(1)(B).

c. Prohibited transactions with parties in interest involving the transfer or use of plan assets to or by a party in interest, here the use of Plan assets by Wells Fargo to defray employer contributions to the Plan. 29 U.S.C. § 1106(a)(1)(D).

d. Prohibited transactions by acting for the benefit of Wells Fargo in Preferred Stock transactions with the Plan. 29 U.S.C. § 1106(b)(2).

108.   In the alternative, if the values for the Plan's Preferred Stock reported by Defendants were correct, then the Plan received less than fair market value for its Preferred Stock when the Preferred Stock was converted to Common Stock.

109.   As a result of its malfeasance, GreatBanc entered into an agreement with the DOL in September 2022 to never serve as a public company retirement plan fiduciary in connection with any future leveraged transaction involving an ESOP unless the plan acquires only publicly traded stock and pays no more than the fair market value.

110.   In 2014, GreatBanc entered into a process agreement with the DOL whereby it agreed to change its practices and procedures with respect to valuing employer stock in ESOPs that is not traded on a public market.

## Second Claim For Relief Against GreatBanc:
## Breach of Fiduciary Duty

111.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112.   GreatBanc was the trustee for the ESOP Fund of the Plan.

113.   GreatBanc was responsible for ensuring the Plan paid no more than fair market value for Preferred Stock.

114.   GreatBanc determined the fair market value of Preferred Stock the Plan purchased from Wells Fargo.

115.   Wells Fargo, a party in interest, was the counter-party in Preferred Stock transactions with the Plan.

116.   GreatBanc's fair market value determinations included future dividend payments discounted to present value.

117.   GreatBanc knew that a material portion of future dividend payments would be used to defray Wells Fargo's liabilities instead of inuring to the benefit of the Plan.

118.   GreatBanc caused the Plan to pay for future dividend income the Plan would never receive.

119.   GreatBanc caused the Plan to repeatedly pay more than fair market value for Preferred stock.

120.   By engaging in this conduct, GreatBanc repeatedly breached its duties of prudence and loyalty and the exclusive benefit rule.

121.   GreatBanc violated its fiduciary obligations, including:

    a.   The duty of loyalty. 29 U.S.C. § 1104(a)(1)(A).

    b.   The duty of prudence. 29 U.S.C. § 1104(a)(1)(B).

    c.   The duty to act in accordance with the documents and instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

    d.   The duty to hold Plan assets for the exclusive purposes of providing benefits to participants in the Plan and defraying reasonable expenses of administering the Plan and making certain that Plan assets never inure to the benefit of the employer, here Wells Fargo. 29 U.S.C. § 1103(c).

122.   As a result of its malfeasance, GreatBanc entered into an agreement with the DOL in September 2022 to never serve as a public company retirement plan fiduciary in connection with any future leveraged transaction involving an ESOP unless the plan acquires only publicly traded stock and pays no more than the fair market value.

123.   In 2014, GreatBanc entered into a process agreement with the DOL whereby it agreed to change its practices and procedures with respect to valuing employer stock in ESOPs that is not traded on a public market.

### Third Claim For Relief Against Wells Fargo:
### Prohibited Transactions

124.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

125.   Wells Fargo, as plan sponsor, was, by definition, a party in interest to the Plan.

126.   Wells Fargo was a fiduciary of the Plan because it converted Plan assets, reclassified dividend payments, for its own use and therefore exercised discretion and control over such assets. In addition, Wells Fargo was a fiduciary of the Plan by virtue of its power to appoint the Trustee of the Plan and duty to monitor the performance of the Trustee.

127.   Wells Fargo was a fiduciary for the Plan because it had discretion under the terms of the ESOP loans to use all dividends to pay ESOP notes.

128.   By converting Plan assets for its own use, Wells Fargo engaged in prohibited transactions.

129.   By receiving more than fair market value for Preferred Stock sold to the ESOP and extending credit to the ESOP, Wells Fargo knowingly participated in prohibited transactions with the Plan.

130.    Wells Fargo violated ERISA's prohibited transaction rules, including the following:

    a.  Prohibited transactions with parties in interest involving the sale of property, here Preferred Stock, by a party in interest to the Plan. 29 U.S.C. § 1106(a)(1)(A).

    b.  Prohibited transactions involving the lending of money or other extension of credit between the Plan and a party in interest, here the ESOP loans between Wells Fargo and the Plan. 29 U.S.C. § 1106(a)(1)(B).

    c.  Prohibited transactions with parties in interest involving the transfer or use of plan assets to or by a party in interest, here the use of Plan assets by Wells Fargo to defray employer contributions to the Plan. 29 U.S.C. § 1106(a)(1)(D).

    d.  Prohibited transactions in dealing with Plan assets in its own interest. 29 U.S.C. § 1106(b)(1).

131.    Wells Fargo is liable as a party in interest for knowingly participating in GreatBanc's violations of ERISA in connection with Preferred Stock transactions because it knew that GreatBanc caused the Plan to pay more than fair market value where it knew the Plan would not receive the dividend income impounded into the price the Plan paid for Preferred Stock.

It knew this because Wells Fargo set the mechanisms for reclassifying dividends and knew it would use reclassified dividends for itself.

132.   Wells Fargo is liable as a fiduciary for dealing with Plan assets in its own interest or for its own account by using a portion of dividends paid on the Plan's Preferred Stock to defray its obligation to make annual contributions to the Plan.

133.   In the alternative, if the values for the Plan's Preferred Stock reported by Defendants were correct, then Wells Fargo participated in transactions whereby the Plan received less than fair market value for its Preferred Stock when the Preferred Stock was converted to Common Stock.

### Fourth Claim For Relief Against Wells Fargo: Breach of Fiduciary Duty

134.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

135.   Wells Fargo, as plan sponsor, was, by definition, a party in interest to the Plan.

136.   Wells Fargo was a fiduciary of the Plan because it converted Plan assets, reclassified dividend payments, for its own use and therefore exercised discretion and control over such assets. In addition, Wells Fargo was a fiduciary of the Plan by virtue of its power to appoint the Trustee of the Plan and duty to monitor the performance of the Trustee.

137.   Wells Fargo was a fiduciary for the Plan because it had discretion under the terms of the ESOP loans to use all dividends to pay ESOP notes.

138.   By converting Plan assets for its own use, Wells Fargo breached its fiduciary duties and violated the exclusive purpose rule.

139.   By receiving more than fair market value for Preferred Stock sold to the ESOP and extending credit to the ESOP, Wells Fargo breached its fiduciary duties.

140.   By permitting GreatBanc to cause the Plan to engage in prohibited transactions, Wells Fargo breached its fiduciary duty to monitor GreatBanc.

141.   Wells Fargo violated its fiduciary obligations, including:

a.   The duty of loyalty. 29 U.S.C. § 1104(a)(1)(A).

b.   The duty of prudence. 29 U.S.C. § 1104(a)(1)(B).

c.   The duty to act in accordance with the documents and instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

d.   The duty to hold Plan assets for the exclusive purposes of providing benefits to participants in the Plan and defraying reasonable expenses of administering the Plan and making certain that Plan assets never inure to the benefit of the employer, here Wells Fargo. 29 U.S.C. § 1103(c).

### Fifth Claim For Relief Against Sloan:
### Prohibited Transactions

142.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

143.   Defendant Sloan was the Chief Executive Officer and President of Wells Fargo from October 2016 to March 2019, and, thus, a party in interest to the Plan.

144.   On October 12, 2016, Wells Fargo's board designated Sloan as the sole member of the Board's ESOP Committee. The ESOP Committee decides whether, when, and under what terms to issue Preferred Stock to the Plan in exchange for loans. Sloan was the sole member of the ESOP Committee for the 2017 and 2018 transactions between the Plan and Wells Fargo in Preferred Stock.

145.   Sloan knew or should have known the Plan paid more than fair market value for Preferred Stock because he knew dividends exceeding minimum loan payments would be used to defray Wells Fargo's employer matching liabilities instead of inuring to the benefit of the Plan, even though such dividends were impounded into the fair market value conclusion made by GreatBanc.

146.   As CEO and President of Wells Fargo, Sloan had discretion under the terms of the Plan to apply dividends exceeding required loan payments on

35

ESOP loans to make additional principal payments on such loans. This gave Sloan discretionary control over Plan assets.

147. Sloan used his discretionary authority to take Plan assets, reclassified dividends, for the use of Wells Fargo. Such decisions helped the profitability of the company by hundreds of millions annually, which in turn benefited Sloan through various forms of compensation.

148. Sloan violated ERISA's prohibited transaction rules, including the following:

    a. Prohibited transactions with parties in interest involving the sale of property, here Preferred Stock, by a party in interest to the Plan. 29 U.S.C. § 1106(a)(1)(A).

    b. Prohibited transactions involving the lending of money or other extension of credit between the Plan and a party in interest, here the ESOP loans between Wells Fargo and the Plan. 29 U.S.C. § 1106(a)(1)(B).

    c. Prohibited transactions with parties in interest involving the transfer or use of plan assets to or by a party in interest, here the use of Plan assets by Wells Fargo to defray employer contributions to the Plan. 29 U.S.C. § 1106(a)(1)(D).

    d. Prohibited transactions in dealing with Plan assets in its own interest. 29 U.S.C. § 1106(b)(1).

149.   Sloan is liable as a party in interest for knowingly participating in GreatBanc's violations of ERISA in connection with Preferred Stock transactions because he knew that GreatBanc caused the Plan to pay more than fair market value where it knew the Plan would not receive the dividend income impounded into the price the Plan paid for Preferred Stock. He knew this because he set the mechanisms for reclassifying dividends and knew it would use reclassified dividends for itself.

150.   In the alternative, if the values for the Plan's Preferred Stock reported by Defendants were correct, then Sloan knowingly participated in transactions whereby the Plan received less than fair market value for its Preferred Stock when the Preferred Stock was converted to Common Stock.

151.   Sloan is liable as a fiduciary for dealing with Plan assets for Wells Fargo's benefit and in his own interest by using a portion of dividends paid on the Plan's Preferred Stock to defray Wells Fargo's obligation to make annual contributions to the Plan.

**Sixth Claim For Relief Against Sloan:**
**Breach of Fiduciary Duty**

152.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

153.   Defendant Sloan was the Chief Executive Officer and President of Wells Fargo from October 2016 to March 2019, and, thus, a party in interest to the Plan.

154.   On October 12, 2016, Wells Fargo's board designated Sloan as the sole member of the Board's ESOP Committee. The ESOP Committee decides whether, when, and under what terms to issue Preferred Stock to the Plan in exchange for loans. Sloan was the sole member of the ESOP Committee for the 2017 and 2018 transactions between the Plan and Wells Fargo in Preferred Stock.

155.   Sloan knew or should have known the Plan paid more than fair market value for Preferred Stock because he knew dividends exceeding minimum loan payments would be used to defray Wells Fargo's employer matching liabilities instead of inuring to the benefit of the Plan, even though such dividends were impounded into the fair market value conclusion made by GreatBanc.

156.   In the alternative, if the values for the Plan's Preferred Stock reported by Defendants were correct, then Sloan knew or should have known that the Plan received less than fair market value for its Preferred Stock when the Preferred Stock was converted to Common Stock.

157.   As CEO and President of Wells Fargo, Sloan had discretion under the terms of the Plan to apply dividends exceeding required loan payments on

ESOP loans to make additional principal payments on such loans. This gave Sloan discretionary control over Plan assets.

158.   Sloan used his discretionary authority to take Plan assets, reclassified dividends, for the use of Wells Fargo. Such decisions helped the profitability of the company by hundreds of millions annually, which in turn benefited Sloan through various forms of compensation.

159.   Sloan violated his fiduciary obligations, including:

   a.  The duty of loyalty. 29 U.S.C. § 1104(a)(1)(A).

   b.  The duty of prudence. 29 U.S.C. § 1104(a)(1)(B).

   c.  The duty to act in accordance with the documents and
       instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

### Seventh Claim For Relief Against All Defendants: Breach of Co-Fiduciary Duties

160.   Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

161.   As set forth herein, each of the Defendants was a fiduciary to the Plan.

162.   GreatBanc knew or should have known that Wells Fargo engaged in prohibited transactions and breaches of fiduciary duty because GreatBanc knew it was causing the Plan to pay more than fair market value, as

explained herein, and it knew Wells Fargo would and did divert Plan assets for Wells Fargo's use and benefit.

163.   Wells Fargo knew or should have known that GreatBanc engaged in prohibited transactions and breaches of fiduciary duty because Wells Fargo knew GreatBanc was causing the Plan to pay more than fair market value, as explained herein, and it knew GreatBanc did and would allow Wells Fargo to divert Plan assets for Wells Fargo's use and benefit.

164.   Sloan knew or should have known that GreatBanc and Wells Fargo engaged in prohibited transactions and breaches of fiduciary duty because he knew GreatBanc was causing the Plan to pay more than fair market value, as explained herein, and he knew GreatBanc did and would allow Wells Fargo and him to divert Plan assets for Wells Fargo's use and benefit.

165.   Wells Fargo and the Committee Defendants had a duty to monitor GreatBanc because Wells Fargo appointed GreatBanc as Trustee and had the power to remove GreatBanc as Trustee.

166.   The Committee Defendants had primary responsibility for administering the Plan and primary responsibility for Plan investments outside the ESOP components.

167.   The Committee Defendants met periodically to review Plan investments.

168.   The Committee Defendants were familiar with the practices and policies of Wells Fargo with respect to the operation of the ESOP components of the Plan.

169.   The Committee Defendants were aware that Wells Fargo took and would take reclassified dividends due the Plan for Wells Fargo's own use and benefit.

170.   The Committee Defendants were aware that Wells Fargo took and would take reclassified dividends due the Plan for Wells Fargo's own use and benefit.

171.   The Committee Defendants were aware that Defendants reported the value of Wells Fargo Preferred Stock at more than $1,000 per share but, when redeemed, the Plan only received $1,000 worth of Wells Fargo Common Stock.

172.   The Committee Defendants took no steps to remedy any of their co-fiduciaries' violations of ERISA.

173.   All Defendants are liable for the breaches of co-fiduciary duty.

## VIII.   ENTITLEMENT TO RELIEF

174.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants who are fiduciaries and/or parties in interest pursuant to 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in 29 U.S.C. § 1109, including for

recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

175.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to 29 U.S.C. § 1132(a)(3) to sue any of the Defendants for appropriate equitable relief to redress the wrongs described herein.

## IX.   PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.   Declare that Wells Fargo, Sloan, and GreatBanc breached their fiduciary duties under ERISA;

B.   Declare that Wells Fargo, Sloan, and GreatBanc caused the Plan to engage in and themselves engaged in prohibited transactions under ERISA;

C.   Declare that all Defendants breached their co-fiduciary duties under ERISA;

D.   Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan those losses resulting from the fiduciary breaches and prohibited transactions

and restore any profits it has made through use of assets of the Plan;

E.      Order each Defendant to provide other appropriate equitable relief to the Plan, and any successor trust, and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.      Order the proceeds of any recovery for the Plan, and any successor trust, to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the violations of ERISA in accordance with the Court's declaration;

G.      Order the removal of any of the breaching fiduciaries from their position as fiduciaries for the Plan and enjoin any of the breaching fiduciaries from acting as fiduciaries for any plan that covers any Wells Fargo employees or any members of the Class;

H.      Appoint an Independent Fiduciary to manage the Plan to the extent necessary and the costs of such Independent

Fiduciary to be paid for by any Defendants found to have breached their fiduciary duties or otherwise violated ERISA;

I.      Enter a permanent injunction barring GreatBanc from serving as an ERISA fiduciary;

J.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as trustee for the Plan as well as any earnings and profits thereon;

L.      Order Defendants to pay pre-judgment and post-judgment interest;

M.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, and certify the named Plaintiffs as class representatives and their counsel as class counsel; and

N.      Award such other and further relief as the Court deems equitable and just.

Dated:  September 26, 2022              Respectfully submitted,

s/ Paul J. Lukas
Paul J. Lukas, MN Bar No. 022084X
Steven Andrew Smith, MN Bar No. 260836

44

Brock J. Specht, MN Bar No. 0388343
NICHOLS KASTER, PLLP
80 South 8th St., Suite 4700
Minneapolis, MN 55402
(612) 256-3200
(612) 338-4878 (fax)
lukas@nka.com
smith@nka.com
bspecht@nka.com

Gregory Y. Porter (*pro hac vice to be filed*)
Mark G. Boyko (*pro hac vice to be filed*)
BAILEY & GLASSER LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

Nina Wasow (*pro hac vice to be filed*)
Daniel Feinberg (*pro hac vice to be filed*)
Todd Jackson (*pro hac vice to be filed*)
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
(510) 269-7998
(510) 269-7994 fax
nina@feinbergjackson.com
dan@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiffs*