UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Aryne Randall, Scott Kuhn, and Peter Morrissey, on behalf of the Wells Fargo & Company 401(k) Plan and a class of similarly situated participants of the Plan, | File No. 22-cv-2354 (ECT/DJF) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| GreatBanc Trust Company, Wells Fargo & Co., and Timothy J. Sloan, | |
| Defendants. | |

Daniel Feinberg, Nina Wasow, and Todd Jackson, Feinberg, Jackson, Worthman & Wasow, LLP, Berkeley, CA, and Brock J. Specht, Paul J. Lukas, and Steven Andrew Smith, Nichols Kaster PLLP, Minneapolis, MN, for Plaintiffs Aryne Randall, and Scott Kuhn.

Brock J. Specht and Paul J. Lukas Peter Morrissey, Nichols Kaster PLLP, Minneapolis, MN, for Plaintiff Peter Morrissey.

David Lurie and Roger H. Stetson, Barack Ferrazzano Kirschbaum & Nagelberg, Chicago, IL, and Nichlas H. Callahan, Barack Ferrazzano Kirschbaum & Nagelberg, Wayzata, MN, for Defendant GreatBanc Trust Company.

Kiera Murphy and Richard A. Duncan, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, and Myron D. Rumeld, Russell Laurence Hirschhorn, and Sydney Juliano, Proskauer Rose, LLP, New York, NY, for Defendants Wells Fargo & Co. and Timothy J. Sloan.

Plaintiffs—participants in a 401(k)/Employee Stock Ownership Plan established by Defendant Wells Fargo & Co.—bring ERISA prohibited transaction and breach of fiduciary duty claims against Wells Fargo, plan fiduciary GreatBanc Trust Company, and former Wells Fargo CEO Timothy J. Sloan. Plaintiffs claim that the ESOP paid more than

fair market value for Wells Fargo preferred stock and improperly used preferred stock dividends to satisfy Wells Fargo's matching contributions.

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motions will be denied. Under Rule 12(b)(1), Defendants launch a factual attack, contending Plaintiffs received all common stock they were owed under the terms of the 401(k) plan. But Plaintiffs claim Defendants violated ERISA by using certain preferred stock dividends to satisfy Wells Fargo's matching contributions, and but for these violations, participants of the Plan would have received additional shares of common stock. Defendants' Rule 12(b)(6) motion will be denied because Plaintiffs plausibly allege ERISA prohibited transaction and breach of fiduciary duty claims.

I

*The parties*.   Plaintiffs Aryne Randall, Peter Morrissey, and Scott Kuhn were employees of Defendant Wells Fargo & Company who participated in the Wells Fargo & Company 401(k) Plan (the "Plan"). Am. Compl. [ECF No. 49] ¶¶ 18–22. Wells Fargo is a multinational financial services company that sponsors the Plan. *Id.* ¶¶ 24–25. Defendant Timothy J. Sloan was the Chief Executive Officer of Wells Fargo from October 2016 to March 2019 and was the sole member of the ESOP Committee. *Id.* ¶¶ 30–32. Defendant GreatBanc Trust Company was appointed by Wells Fargo to act as a named fiduciary for the Employee Stock Ownership Fund ("ESOP"). *Id.* ¶¶ 36–37.

*The Plan.* Wells Fargo operates the Plan to help Wells Fargo employees save for retirement. *Id.* ¶ 41. The Plan is a 401(k) defined contribution retirement plan, *id.* ¶ 39, meaning qualified Wells Fargo employees can participate in the Plan by making deferred

salary contributions, ECF No. 91-2 §§ 2.42, 4.1.  Participants in the Plan can invest their salary deferrals in a menu of options, including Wells Fargo stock.  Am. Compl. ¶ 46. Wells Fargo also contributes to the Plan by matching employee salary deferrals and through discretionary profit-sharing.  *Id.* ¶ 44.  Wells Fargo matches employee contributions dollar-for-dollar up to 6% of employees' eligible compensation, ECF No. 91-2 § 5.1(a), and usually makes discretionary profit-sharing contributions to employees' accounts in the amount of 1% of their eligible compensation, *see, e.g.*, ECF No. 45-3 at 31.  Wells Fargo invested its matching and discretionary contributions in Wells Fargo stock through the ESOP.  ECF No. 91-2 § 8.1(a).  Because the ESOP is a "unitized stock fund," participants seem to receive ESOP Fund units in their individual accounts reflecting common stock in the ESOP.  ECF No. 91 ¶¶ 5, 8, 12 n.4.[1]

*Preferred stock.*  Although Wells Fargo distributes some common stock to the ESOP directly from the Wells Fargo treasury, *see* ECF No. 94 ¶ 10(c), Wells Fargo primarily distributes common stock to the ESOP by using convertible Wells Fargo preferred stock,

---

[1]     The difference between ESOP Fund units and common stock is unclear from the record.  Defendants state "[t]he ESOP Fund is a unitized fund, meaning that it is primarily invested in Common Stock and participants receive units in the fund, the value of which is tied to the market value of the contributions of Common Stock to which they are entitled." Defs.' Mem. in Supp. [ECF No. 90] at 8 (footnote omitted).  But at times the parties seem to conflate ESOP Fund units and common stock.  For example, Defendants later state "all dividends earned on Plaintiffs' Common Stock holdings were reinvested in, and deposited in Plaintiffs' accounts as, additional units of Common Stock."  *Id.* at 20.  Plaintiffs do the same.  *See, e.g.*, Pls.' Mem. in Opp'n [ECF No. 100] at 42 ("Plaintiffs would have received more Wells Fargo common stock in their Plan accounts had Wells Fargo administered the Plan properly.").  Because the parties do not address the distinction, if any, between ESOP Fund units and common stock, and neither party contends the distinction is relevant, the distinction (if any) is ignored while deciding this motion.

*see id.* ¶ 10(b).   Preferred stock, and its conversion into common stock, requires an explanation.  Wells Fargo loans money to the ESOP, and the ESOP uses the proceeds to purchase preferred stock from Wells Fargo.  Am. Compl. ¶ 55; ECF No. 91-2 § 16.3.  Once acquired, the ESOP holds the preferred stock in a reserve account as collateral for the loan from Wells Fargo.  Am. Compl. ¶ 58; ECF No. 91-2 § 16.2.  As principal payments are made on the loan, a proportionate amount of preferred stock is released from the reserve account and converted into common stock.  Am. Compl. ¶ 59.  When released from the reserve account, preferred stock converts into $1,000 of common stock "based on the then current market price of Common Stock."  *Id.* ¶ 60.

*Wells Fargo's valuation of preferred stock.*  Despite preferred stock converting into $1,000 worth of common stock, Defendants calculate the value of preferred stock at higher than $1,000.  *Id.* ¶ 79.  This is because the ESOP earns dividends on the preferred stock.  *See, e.g.*, *id.* ¶ 65.  Defendants thus calculate the value of preferred stock to include future dividend income, discounted to present value.  *Id.* ¶ 70.  In 2018, for example, Wells Fargo purchased 1,100,000 shares of Wells Fargo preferred stock for $1,142,900,000.  ECF No. 104 at 5.

*Participants' common stock dividends.*  Shares of Wells Fargo common stock also pay dividends.  Historically, Wells Fargo paid these dividends on "March 1, June 1, September 1, and December 1 to the Plan's trust account."  ECF No. 91 ¶ 6.  Participants in the Plan can reinvest their common stock dividends in the ESOP—in other words, reinvest their common stock dividends in additional shares of common stock—or elect to be paid the dividend in cash.  *Id.* ¶ 7.  Participants who elect to reinvest their dividends in

the ESOP "receive units equivalent to the value of the cash dividends paid." *Id.* ¶ 8. The default option is for participants to reinvest common stock dividends in the ESOP. *Id.* If participants reinvest their dividends in the ESOP, the ESOP pays off the loan with the reinvested common stock dividends to release shares of common stock (by converting preferred stock released from the reserve account into common stock). *See* ECF No. 94 ¶ 10.

*Wells Fargo's allocation of common stock released from the reserve.* The released common stock is allocated to participants according to § 16.5 of the Plan. ECF No. 91-2 § 16.5. If participants do not elect for cash distributions of their common stock dividends, their dividends are reinvested into the ESOP, and participants receive released common stock shares equal to the value of their dividend. *Id.* § 16.5(a). The remaining released common stock shares are allocated pursuant to § 5.1 to satisfy Wells Fargo's matching contributions to participants. *Id.* § 16.5(b). If the common stock released is less than the amount required to equal participants' reinvestment of common stock dividends and Wells Fargo's matching contributions, Wells Fargo covers the shortfall. *Id.* § 16.5(c). Wells Fargo covers the shortfall by contributing cash to the ESOP, and in turn having the ESOP pay off the Wells Fargo loan to release additional shares of common stock, or by distributing common stock to the ESOP directly from the Wells Fargo treasury. ECF No. 94 ¶ 10. If at the end of a calendar year "all allocations under subsections (a) and (b) have been completed and there is Company Stock which has been released from Unallocated Reserves and which remains unallocated, said Company Stock shall be allocated" to participants on a pro rata basis. ECF No. 91-2 § 16.5(e).

*Preferred stock dividends in 2018.*[2]   In 2018, Wells Fargo paid preferred stock dividends to the ESOP totaling $158,847,743.50.  ECF No. 94 ¶ 5.  All of the preferred stock dividends "paid to the ESOP in 2018 were used by the ESOP in 2018 to make loan payments."  *Id.* ¶ 6.[3]  "Wells Fargo contributed an additional $1,016,968,311.70 of cash to make the ESOP loan payments."  *Id.* ¶ 10(b).  The ESOP loan payments released 1,105,029 shares of preferred stock, which converted into 21,446,001 shares of common stock.  *Id.* ¶ 10(c).  Wells Fargo contributed the remaining 2,288,686 shares of common stock needed to fund Wells Fargo's employer matching contributions in 2018 directly from the Wells Fargo treasury.  *Id.* ¶ 11.

*Common stock dividends received by Plaintiffs.*  "[E]ach Plaintiff received all of the units of Common Stock that he or she was entitled in all of their Plan accounts" from September 26, 2016, to March 31, 2023, "as a result of having elected to reinvest all of his or her common stock dividends in the ESOP Fund[.]"  ECF No. 91 ¶ 11.

*Plaintiffs' claims.*  Plaintiffs filed the operative seven-count Amended Complaint on January 6, 2023, as a putative class action.  Am. Compl.  Plaintiffs bring the following seven claims: (1) GreatBanc violated ERISA's prohibited transaction rules, *id.* ¶¶ 98–111; (2) GreatBanc breached its fiduciary duties, *id.* ¶¶ 112–24; (3) Wells Fargo violated ERISA's prohibited transaction rules, *id.* ¶¶ 125–34; (4) Wells Fargo breached its fiduciary

---

[2]     Plaintiffs selected 2018 as the year for jurisdictional discovery.

[3]     Wells Fargo paid dividends into the Plan's short-term investment fund ("STIF").  ECF No. 94 ¶ 3.  The STIF accounts' assets included preferred stock dividends, common stock dividends to be reinvested in common stock, interest earned on money in the STIF accounts, and "cash and other earned income."  *Id.*

duties, *id.* ¶¶ 135–42; (5) Sloan violated ERISA's prohibited transaction rules, *id.* ¶¶ 143–52; (6) Sloan breached his fiduciary duties, *id.* ¶¶ 153–60; and (7) all Defendants breached their co-fiduciary duties, *id.* ¶¶ 161–67.  After jurisdictional discovery, Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6).  ECF No. 88.

## II

Motions under Rule 12(b)(1) may raise either a facial or factual attack on jurisdiction.  *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).  Defendants submit several documents and exhibits following jurisdictional discovery, and therefore their Rule 12(b)(1) motion will be treated as a factual attack on jurisdiction.  When deciding a Rule 12(b)(1) motion asserting a factual attack, the district court considers matters outside the pleadings and resolves disputed facts, applying no presumption of truth to the non-moving party's allegations or evidence (or, for that matter, to the moving party's evidence).  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990).  Looking to matters outside the pleadings does not convert a 12(b)(1) motion to one for summary judgment.  *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).  "Instead, the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence."  *Moss*, 895 F.3d at 1097 (citing *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007)).

To show Article III standing at this stage, Plaintiffs must prove that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[E]conomic or physical harms" are almost always no-doubters. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J., dissenting). This is true even if the harm is "only a few pennies." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014). And although ERISA provides a right to sue for certain violations, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *Thole v. U.S. Bank N.A*, 590 U.S. ----, 140 S. Ct. 1615, 1622 (2020) ("There is no ERISA exception to Article III."). The plaintiff bears the burden of establishing standing. *Spokeo*, 578 U.S. at 338.

To start, Plaintiffs have not demonstrated that the Plan's overpayment for shares of preferred stock, without more, resulted in a concrete injury to Plaintiffs. When an employee invests money in a defined contribution plan, that employee's benefits "are typically tied to the value of their accounts." *Thole*, 140 S. Ct. at 1618. "Thus, the mismanagement of the assets in those individual accounts necessarily causes financial harm to the holders of the accounts." *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 864 (D. Minn. 2021). But here, Plaintiffs do not dispute they received all dividends on their common stock, Wells Fargo's 6% matching contributions, or Wells Fargo's 1% discretionary profit sharing. *See generally* Pls.' Mem. in Opp'n. Even if Wells Fargo had not overpaid for preferred stock in 2018, ECF No. 104 at 5 (3.9% premium in 2018), no

additional shares would have been allocated to Plaintiffs under § 16.5(e) of the Plan.  In 2018, the Plan paid down the loan with $158,847,743.50 in preferred stock dividends, ECF No. 94 ¶ 5, but Wells Fargo contributed an additional $1,016,968,311.70 of cash to the ESOP to pay down the loan, *id.* ¶ 10(b).  Even if the ESOP paid less per share of preferred stock, and therefore acquired slightly more preferred stock (generating more preferred stock dividends), there still would not have been excess shares to distribute under § 16.5(e)—instead, Wells Fargo would have contributed less cash to the Plan.  After all, the Plan is structured to allocate exactly enough shares of common stock to satisfy Wells Fargo's matching contributions to employees.

And Plaintiffs' ESOP-overpayment cases are not analogous.  For example, in *Lloyd v. Argent Trust Co.*, an ESOP acquired stock at $247.22 per share that eventually declined to $18.52 per share.  No. 22cv4129 (DLC), 2022 WL 17542071, at *1 (S.D.N.Y. Dec. 6, 2022).  The court held plaintiffs had Article III standing because "plaintiffs allege that WBBQ's shares were overvalued when purchased, and that this harmed their financial interest in the ESOP."  *Id.* at *2.  By contrast, Plaintiffs do not allege the ESOP's overpayment for the preferred stock led to a drop in the value of Wells Fargo's common stock, the only type of share held by participants' ESOP accounts.  The other Article III cases Plaintiffs cite involve plaintiffs' accounts, interest, or shares in an ESOP being harmed.  *See Innis v. Bankers Tr. Co. of S.D.*, No. 4:16-cv-00650-RGE-SBJ, 2017 WL 4876240, at *4 (S.D. Iowa Oct. 13, 2017) ("[Plaintiff] suffered a diminution in the value of her Plan account because the Plan plunged in value after purchasing Telligen stock for more than fair market value."); *Laidig v. GreatBanc Tr. Co.*, No. 22-cv-1296, 2023 WL

1319624, at *5 (N.D. Ill. Jan. 31, 2023) ("Plaintiffs have pled concrete financial harm to their shares in the Plan as a result of the company's inflated sale price.").[4]  Although an injury to the plan often flows through to participants' accounts in a defined-contribution plan, Plaintiffs have failed to identify a direct injury flowing from the overpayment to Plan participants (including Plaintiffs).

However, Plaintiffs satisfy the injury-in-fact requirement by describing what is best understood as a second injury theory.  Plaintiffs contend that "if Wells Fargo had not misappropriated the ESOP's preferred stock dividends and used them to subsidize its employer matching contributions," Wells Fargo "would have contributed additional shares of common stock to meet its employer matching contribution obligation, and the preferred dividends would have been used to make additional payments on the ESOP loans, converting more preferred stock to common stock for allocation to Plan participants." Pls.' Mem. in Opp'n at 32.  If Plaintiffs are correct that the released shares of common stock cannot be "misappropriated" to satisfy Wells Fargo's matching contribution obligations, then the Plan would have been required to release these additional shares of common stock to Plan participants, including Plaintiffs, under § 16.5(e).  And Plaintiffs bring several claims based on this theory: (1) Wells Fargo breached its fiduciary duties by

---

[4]      And Plaintiffs' remaining cases do not address Article III standing.  *Perez v. Bruister*, 823 F.3d 250, 257–58 (5th Cir. 2016) (examining statutory standing); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294–95 (3d Cir. 2007) ("As noted, the question presented is one of statutory standing.  There is no dispute about Article III or prudential standing."); *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 773–84 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (addressing damages not standing).

"misappropriating the ESOP's preferred stock dividends for employer matching contributions," Pls.' Mem. in Opp'n at 29–30; (2) Sloan breached his fiduciary duties by taking "the ESOP's preferred stock dividends and us[ing] them for Wells Fargo's benefit," *id.* at 30; (3) Sloan engaged in a prohibited transaction by using "Plan assets to benefit Wells Fargo by using the ESOP's preferred stock dividends to defray Wells Fargo's liabilities," *id.* at 26–27; and (4) Wells Fargo engaged in prohibited transactions as a fiduciary "by taking preferred stock dividends belonging to the ESOP and using those dividends to satisfy its employer matching contribution liabilities," *id.* at 25. Assuming Plaintiffs will prevail on the merits of these claims, they have stated an economic injury, fairly traceable to Defendants' conduct, that can be redressed by a judgment in their favor.

Defendants counter that "there is no plausible basis for this contention" because "[t]here is nothing inherently suspicious, much less unlawful, about using dividends paid on stock held by an ESOP to pay down the sponsoring company's loan to its ESOP, and then using the shares generated by the paydown of the loan to satisfy corporate matching obligations." Defs.' Reply Mem. [ECF No. 112] at 4–5. Fair enough. But the lawfulness of the transaction is a merits question. Although Article III standing requires Plaintiffs to have suffered "an invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, a legally protected interest is nothing more than a judicially cognizable interest. *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 959 (8th Cir. 2011). If an alleged invasion of a legally protected interest hinged on whether conduct actually violated the law, this would "effectively collapse our evaluation under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim into an Article III standing evaluation." *Cottrell v. Alcon Lab'ys*,

874 F.3d 154, 164 (3d Cir. 2017).  And courts must not conflate Article III's requirement of injury in fact with the merits.  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016); *ABF Freight Sys., Inc.*, 645 F.3d at 960; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

Assuming Plaintiffs will prevail on their legal claims, they would receive additional shares of Wells Fargo common stock.  It makes no difference for Article III standing purposes that these additional shares might be a windfall stemming from Defendants' allegedly unlawful conduct.  The alleged denial of these additional shares is a concrete economic injury, fairly traceable to Defendants' allegedly unlawful conduct, that would be redressed by a favorable decision.

III

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept "as true all factual allegations in the complaint" and draw "all reasonable inferences" in the plaintiff's favor.  *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citations omitted).  Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Unlike a Rule 12(b)(1) factual attack, when deciding a Rule 12(b)(6) motion, the relevant facts are generally drawn from the Amended Complaint and accepted as true. However, both parties seek to expand the universe of facts to be considered in deciding Defendants' Rule 12(b)(6) motion.

Plaintiffs move for judicial notice of a Wells Fargo & Company Form 10-Q filed with the SEC; a U.S. Department of Labor News Release; the 2016 Plan; the 2017 Summary Plan Description; a Wells Fargo & Company 2017 ESOP Convertible Preferred Stock Certificate filed with the SEC; and a 2018 Wells Fargo Plan Form 5500 filed with the Department of Labor.  ECF No. 109 at 2.  The Plan, central to this case and cited in the Amended Complaint, is embraced by the pleadings.  *See J.W. by & through Williams v. Cigna Health & Life Ins. Co.*, No. 4:21-cv-00324-SRC, 2021 WL 5415051, at *4 (E.D. Mo. Nov. 19, 2021); *Shafer v. Zimmerman Transfer, Inc.*, No. 1:20-cv-00023, 2020 WL 7260034, at *4 n.4 (S.D. Iowa Dec. 10, 2020).  Plaintiffs' motion for judicial notice will be denied as moot with respect to the remaining exhibits because those exhibits would not change anything even if considered.

Defendants, on the other hand, request that "[t]he Plan records" be considered because they "are integral to [Plaintiffs'] claims."  Defs.' Mem. in Supp. at 22 n.10.  Defendants seem to mean that exhibits filed in support of their Rule 12(b)(1) motion are embraced by the pleadings.  Not so.  Documents embraced by the pleadings is a narrow exception to the general exclusionary rule.  *See, e.g.*, *In Meiners v. Wells Fargo & Co.*, No. 16-cv-3981 (DSD/FLN), 2017 WL 2303968, at *2 (D. Minn. May 25, 2017) (finding that a prospectus was embraced by the pleadings when the complaint referenced specific

prospectus data); *Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 967 F. Supp. 1148, 1153 (D. Minn. 1997) (finding that insurance policies were embraced by the pleadings in a declaratory judgment action that turned on the interpretation of underlying insurance policies). But here, Defendants request that exhibits be considered to disprove factual allegations in the Amended Complaint. The exhibits, mainly account records, were not specifically referenced in the Amended Complaint. Nor are Defendants' exhibits similar to an ERISA plan, insurance policy, or other contract that serves as the foundation to a plaintiff's claims. This is not the time to consider evidence contrary to factual allegations in the Amended Complaint.

Having decided the relevant universe of facts, turn to Plaintiffs' claims. Plaintiffs bring the following seven claims: (1) GreatBanc engaged in prohibited transactions, Am. Compl. ¶¶ 98–111; (2) GreatBanc breached its fiduciary duties, *id.* ¶¶ 112–24; (3) Wells Fargo engaged in prohibited transactions, *id.* ¶¶ 125–34; (4) Wells Fargo breached its fiduciary duties, *id.* ¶¶ 135–42; (5) Sloan engaged in prohibited transactions, *id.* ¶¶ 143–52; (6) Sloan breached his fiduciary duties, *id.* ¶¶ 153–60; and (7) all Defendants breached their co-fiduciary duties, *id.* ¶¶ 161–67. Each alleged prohibited transaction and breach of fiduciary duty will be addressed in turn.

A

Start with Plaintiffs' prohibited transaction claims. Section 1106 of ERISA "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § [11]04(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000)

(quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)).  Section 1106(a)(1) prohibits several transactions between the plan and a party in interest.  ERISA defines "party in interest" to include any plan fiduciary, *id.* § 1002(14)(a), and the "employer any of whose employees are covered by such plan," *id.* §1002(14)(c).  Section 1106(a)(1) requires a showing that a plan fiduciary, "with actual or constructive knowledge of the facts satisfying the elements of a § [11]06(a) transaction, caused the plan to engage in the transaction."  *Harris Tr. & Sav. Bank*, 530 U.S. at 251.  Knowing participants in prohibited transactions may also be found liable.  *See id*.  Although ERISA includes several exemptions to prohibited transactions under § 1108, a plaintiff is not required to address any exemptions in the complaint because "the statutory exemptions established by § 1108 are defenses which must be proven by the defendant."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601–03 (8th Cir. 2009).  Broken down, the elements "of a party-in-interest, prohibited transaction claim are: (1) the fiduciary causes (2) a listed transaction to occur (3) between the plan and a party in interest."  *Sweda v. Univ. of Pa.*, 923 F.3d 320, 335 (3d Cir. 2019).

(1) Section 1106(a)(1)(A) prohibits the "sale or exchange . . . of any property between the plan and a party in interest."  GreatBanc, as the appointed Trustee of the Plan, is a plan fiduciary.  Am. Compl. ¶ 36.  The Amended Complaint plausibly alleges GreatBanc caused the ESOP to purchase preferred stock from Wells Fargo despite knowing Wells Fargo was the employer sponsoring the Plan.  *Id.* ¶¶ 36–37, 55, 108.  As the employer of employees who are covered by the Plan, Wells Fargo was a party in interest.  *See* 29 U.S.C. § 1002(14)(c).  And the Amended Complaint plausibly alleges Sloan and Wells

Fargo knowingly participated in the preferred stock transactions.  Am. Compl. ¶¶ 32, 132, 145.

(2) Section 1106(a)(1)(B) prohibits the "lending of money or other extension of credit between the plan and a party in interest."  The Amended Complaint plausibly alleges that GreatBanc caused the ESOP to borrow money from Wells Fargo, a party in interest. Am. Compl. ¶¶ 36–37, 55, 108.  And the Amended Complaint plausibly alleges Wells Fargo and Sloan knowingly participated in the loan transactions.  Am. Compl. ¶¶ 32, 132, 145.

(3) Section 1106(a)(1)(D) prohibits the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  Although ERISA does not define plan assets, the Eighth Circuit has looked approvingly to Department of Labor definitions, noting the "Secretary of Labor has repeatedly defined plan assets consistently with ordinary notions of property rights, including in the definition any funds in which a plan has obtained a beneficial interest." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007) (quotations omitted).  At this juncture, without any objection from Defendants, it is assumed (without deciding) that the preferred stock dividends were plan assets.  The Amended Complaint alleges Defendants reclassified an unknown sum of preferred stock dividends as employer contributions, thereby using the "dividends to offset [Wells Fargo's] employer matching contributions."  Am. Compl. ¶¶ 68, 76, 83.  Although some pertinent allegations are general and conclusory, the Amended Complaint contains enough factual content, with all inferences in Plaintiffs' favor, to plausibly allege "reclassified dividends on the Plan's Preferred Stock" were used to Wells Fargo's benefit—to satisfy its matching

16

contribution obligations.  *See id.*  And the Amended Complaint plausibly alleges all three Defendants knowingly participated in the reclassification of preferred stock dividends.  *Id.* ¶¶ 36, 104, 108, 147, 150.

(4) Section 1106(b) prohibits certain transactions between the plan and a plan fiduciary.  Section 1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  A plan fiduciary may be named in the plan documents, but also includes "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citing 29 U.S.C. § 1002(21)(A)).  Plaintiffs allege Wells Fargo was a plan fiduciary because it exercised control of reclassified dividend payments, by virtue of its power to appoint and monitor the Trustee (GreatBanc), and because of its discretion to use preferred stock dividends to pay down the loans.  Am. Compl. ¶¶ 29, 137–39; ECF No. 91-2 § 16.4 ("Any such dividends or contributions in excess of the amount of required loan payments may be used to make additional principal payments . . . as determined by [Wells Fargo] in its discretion."); *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992) (explaining that an individual's power to appoint the plan trustee makes that individual a fiduciary to the extent "he exercises the discretion or control described in § 1002(21)(A)").  This is enough to reasonably conclude that Wells Fargo, at times, was acting as a plan fiduciary.  The remaining elements of a § 1106(b)(1) violation cross-apply with the alleged § 1106(a)(1)(D) violation: Wells Fargo used preferred stock dividends in its own interest, while GreatBanc and Sloan knowingly participated in the reclassification of dividends.

B

Turn to Plaintiffs' breach of fiduciary duty claims. Section 1104 establishes the fiduciary duties owed by a plan fiduciary. "In order to state a claim under this provision, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. Fiduciary status is not an all or nothing concept; it applies "only when the individual is performing a fiduciary duty." *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Loc. 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008).

"ERISA imposes upon fiduciaries twin duties of loyalty and prudence." *Braden*, 588 F.3d at 595 . Codified in subsection 29 U.S.C. § 1104: a plan fiduciary

> shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>>
>> (ii) defraying reasonable expenses of administering the plan
>
> (B); with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan[.]

"Subsection (a)(1)(A) codifies the duty of loyalty and subsection (a)(1)(B) articulates the duty of prudence." *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 793 (D. Minn. 2018).

(1) Plaintiffs claim all three Defendants breached the fiduciary duty of loyalty. "Perhaps the most fundamental duty of a [fiduciary] is that he must display . . . complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1308 (D. Minn. 2021) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000)). GreatBanc is a named fiduciary, with discretionary authority to manage the ESOP and its assets. Am. Compl. ¶ 36. Plaintiffs plausibly allege GreatBanc paid more than fair market value for the preferred stock and reclassified preferred stock dividends to satisfy Wells Fargo's employer contribution obligations, conduct not in the best interest of the Plan or the Plan's participants, *id.* ¶¶ 69–71, 80. And it's plausible this conduct harmed the Plan and its participants. *See id.* ¶¶ 82–84, 86. Plaintiffs also allege Wells Fargo and Sloan had discretionary control of certain preferred stock dividends and reclassified those dividends to satisfy Wells Fargo's matching obligations. Am. Compl. ¶¶ 137, 158–159. The Amended Complaint includes enough factual content to conclude Wells Fargo and Sloan acted as functional plan fiduciaries when controlling preferred stock dividends, breached the fiduciary duty of loyalty by redirecting those preferred stock dividends for Wells

Fargo's benefit, and that this breach harmed the Plan and its participants.[5]  *Id.* ¶¶ 82–84, 86.

(2) Next, Plaintiffs claim all three Defendants breached the fiduciary duty of prudence.  "The statute's prudent person standard is an objective standard that focuses on a fiduciary's conduct before the challenged decision."  *Larson*, 350 F. Supp. 3d at 793 . "Under this standard, a fiduciary is obligated to investigate all decisions that will affect the pension plan."  *Schaefer v. Ark. Med. Soc.*, 853 F.2d 1487, 1491 (8th Cir. 1988).  "Even when the complaint does not allege facts showing specifically how the fiduciaries breached their duty through improper decision-making, a claim can survive a motion to dismiss if the court may reasonably infer that the fiduciaries engaged in a flawed decision-making process."  *Larson*, 350 F. Supp. 3d at 793 (citing *Braden*, 588 F.3d at 595–96).  GreatBanc determined the fair market value for the preferred stock the ESOP purchased from Wells Fargo.  Am. Compl. ¶ 115.  It is plausible GreatBanc engaged in a flawed decision-making process by including dividend payments in its fair market analysis.  *Id.* ¶¶ 117–21.  And the Amended Complaint plausibly alleges that GreatBanc's overvaluation of Wells Fargo's preferred stocks harmed the Plan and its participants.  *Id.* ¶¶ 82, 86, 119.

Although the Amended Complaint includes conclusory allegations that Wells Fargo and Sloan breached the duty of prudence, Am. Compl. ¶¶ 142(b), 160(b), no theory for such a breach has been identified, *id.* ¶¶135–142, 153–159.  However, a breach of the duty

---

[5]    When deciding Defendants' Rule 12(b)(6) motion, it makes no difference that some facts alleged in the Amended Complaint are inconsistent with the evidence considered when deciding Defendants' 12(b)(1) factual attack.

of prudence does not necessarily need to be alleged separately from a breach of the duty of loyalty. *See Larson*, 350 F. Supp. 3d at 804–05 (concluding the duties of loyalty and prudence may be considered together or analyzed independently); *Parmer*, 518 F. Supp. 3d at 1308 (same); *Morin v. Essentia Health*, No. 16-cv-4397 (RHK/LIB), 2017 WL 4083133 (D. Minn. Sept. 14, 2017), *report and recommendation adopted,* No. 16-cv-4397 (RHK/LIB), 2017 WL 4876281, at *9 (D. Minn. Oct. 27, 2017) ("[L]anguage from the Eighth Circuit tends to support Plaintiffs' position that the duties of loyalty and prudence are intertwined and need not be pled separately in a Complaint in order to survive a Rule 12(b)(6) Motion to Dismiss.").  At this time, Defendants have not contended that a breach of the duty of prudence should be treated independently from a breach of the duty loyalty. Having concluded the Amended Complaint plausibly alleges Wells Fargo and Sloan breached the fiduciary duty of loyalty, Plaintiffs' claim that those same Defendants breached the duty of prudence will not be dismissed here.

(3) Plaintiffs also allege all three Defendants violated 29 U.S.C. § 1104(a)(1)(D), the duty to act in accordance with the Plan documents.  Section 1104(a)(1)(D) requires plan fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."  Section 11.5 of the Plan requires the Trust Fund to be used "for the exclusive purpose of providing benefits to Participants under the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan. . . .  No part of the corpus or income of the Trust Fund may be used for; or diverted to, purposes other than for the exclusive benefit of employees of the Participating Employers or their

beneficiaries." ECF No. 91-2 § 11.5. The same facts that plausibly state a breach of Defendants' duty of loyalty suffices to state a claim that Defendants breached their duty to act in accordance with the instruments governing the Plan.

(4) The same conclusion follows for Plaintiffs' claims predicated on § 1103(c), ERISA's anti-inurement provision. Section 1103(c)(1) mandates that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004). There is "scant caselaw discussing the precise elements of a *prima facie* claim of violation of ERISA's anti-inurement provision." *Acosta v. Schwab*, No. 5:18-cv-3544, 2019 WL 7046916, at *5 (E.D. Pa. Dec. 20, 2019). Some courts have concluded indirect benefits inuring to an employer are insufficient. *Krohnengold v. N.Y. Life Ins. Co.*, No. 21-CV-1778 (JMF), 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022) (collecting cases). Without any argument to the contrary, it is fair to conclude the same facts that plausibly allege Defendants breached the duty of loyalty state a claim under the anti-inurement provision.

(5) Plaintiffs also allege Wells Fargo breached a duty to monitor GreatBanc. "[A]ppointing fiduciaries must review the performance of trustees and other fiduciaries 'in such manner as may be reasonably expected to ensure that their performance has been in

compliance with the terms of the plan and statutory standards.'" *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1093 (D. Minn. 2017) (quoting *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)).  To state a failure to monitor claim, a plaintiff must allege (1) that the defendant was responsible for appointing and removing the fiduciary responsible for an alleged breach of fiduciary duties; and (2) the defendant had knowledge or participated in those fiduciary breaches.  *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012) (citing *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 787 (E.D. Mo. 2010)).  Plaintiffs allege Wells Fargo had the power to appoint the Trustee of the Plan, Am. Compl. ¶ 137,[6] and knowingly participated in the alleged breaches of fiduciary duty.  And because Plaintiffs plausibly pled an underlying breach of fiduciary duty, their duty to monitor claim survives.  *Larson*, 350 F. Supp. 3d at 805; *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017)).

(6) Finally, turn to Plaintiffs' breach of co-fiduciary duties claim.  Section 1105 provides that:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which

---

[6]    It is a reasonable inference that Wells Fargo also had the power to remove the Trustee.

give rise to his status as a fiduciary, he has enabled such other
fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary,
unless he makes reasonable efforts under the circumstances to
remedy the breach.

29 U.S.C. § 1105(a).   Having plausibly alleged breaches of fiduciary duty against
GreatBanc, Wells Fargo, and Sloan, Plaintiffs' breach of co-fiduciary duty claims survive.
See Krueger, 2012 WL 5873825, at *19; Larson, 350 F. Supp. 3d at 806.

C

Defendants' Rule 12(b)(6) motion does not attack the Amended Complaint on a
count-by-count basis.  Instead, Defendants contend that "Plaintiffs' claim that Wells Fargo
had misused 'an unknown amount' of Preferred Stock dividends was too vague to be
viable."  Defs.' Reply Mem. at 10.  But the Rule (12)(b)(6) plausibility standard does not
require "heightened fact pleading of specifics."  Twombly, 550 U.S. at 570.  The application
of Rule 8 and Rule 12(b)(6) is a "context specific" task that requires "the reviewing court
to draw on its experience and common sense."  Iqbal, 556 U.S. at 663–64.  Although a bare
allegation that Wells Fargo misused an unknown amount of preferred stock would not be
enough, here Plaintiffs sketch out a complex set of ESOP transactions that allegedly
benefited Wells Fargo to the detriment of the Plan and its participants.  These facts render
Plaintiffs' claim that Defendants misused preferred stock dividends plausible.  Nor is there
any reason to believe that Plaintiffs should have access to more details about the allegedly
wrongful transactions when they filed the Amended Complaint.  Cf. Becker v. Wells Fargo
& Co., No. 20-cv-2016 (DWF/BRT), 2021 WL 1909632, at *7 (D. Minn. May 12, 2021).

Next, Defendants contend "Plaintiffs have abandoned their claim that dividends on Common Stock were misused. Thus, insofar as their claims are predicated on this allegation, their claims should be dismissed." Defs.' Reply Mem. at 10–11. However, none of Plaintiffs' claims are predicated solely on the misuse of common stock dividends. Even assuming Plaintiffs waived that theory by failing to adequately respond, no claims would be subject to dismissal under Rule 12(b)(6).

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Plaintiffs' Motion for Judicial Notice [ECF No. 107] is **GRANTED IN PART** and **DENIED IN PART** as moot.

2.     Defendants' Motion to Dismiss [ECF No.88] is **DENIED**.


Dated:  February 21, 2024                    s/ Eric C. Tostrud
                                                            Eric C. Tostrud
                                                            United States District Court