# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ARYNE RANDALL, SCOTT KUHN, and PETER MORRISSEY, *on behalf of the Wells Fargo & Company 401(k) Plan and a class of similarly situated participants of the Plan*, | Case No. 22-cv-2354 (LMP/DJF) |
| Plaintiffs, | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| v. | |
| GREATBANC TRUST COMPANY, WELLS FARGO & CO., and TIMOTHY J. SLOAN, | |
| Defendants. | |

Brock J. Specht, Steven Andrew Smith, and Elizabeth M. Binczik, **Nichols Kaster, PLLP**, **Minneapolis, MN**; Daniel Feinberg, Nina Wasow, and Todd Jackson, **Feinberg, Jackson, Worthman & Wasow LLP, Berkeley, CA**; Mary Bortscheller, **Feinberg, Jackson, Worthman & Wasow LLP, Minneapolis, MN**; Gregory Y. Porter, **Bailey & Glasser LLP, Washington, D.C.**; Mark G. Boyko, **Bailey & Glasser LLP, Webster Groves, MO**; and Laura Babiak, **Bailey & Glasser LLP; Charleston, WV**, for Plaintiffs.

David Lurie and Roger H. Stetson, **Barack Ferrazzano Kirschbaum & Nagelberg, Chicago, IL**; Nicholas H. Callahan, **Barack Ferrazzano Kirschbaum & Nagelberg, Wayzata, MN**, for Defendant GreatBanc Trust Company.

Kiera Murphy and Jeffrey P. Justman, **Faegre Drinker Biddle & Reath LLP, Minneapolis, MN**; Myron D. Rumeld, Russell Laurence Hirschhorn, Joseph Emanuel Clark, and Sydney Juliano, **Proskauer Rose LLP, New York, NY**, for Defendants Wells Fargo & Co. and Timothy J. Sloan.

Plaintiffs Aryne Randall, Scott Kuhn, and Peter Morrissey brought this class action under the Employee Retirement Income Security Act ("ERISA"), alleging breaches of fiduciary duty and prohibited transactions by Defendants Wells Fargo & Co., GreatBanc

1

Trust Company, and Timothy J. Sloan (collectively, "Defendants"). *See generally* ECF No. 49. After several years of hard-fought litigation, the parties have come to a settlement, and Plaintiffs now move for final approval of that settlement. ECF No. 234. Plaintiffs also move for an award of attorneys' fees for Class Counsel, expenses, and service awards for the Class Representatives. ECF No. 220. Defendants do not oppose either motion, and the Court has received no objections to either motion from class members. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiffs were former employees of Wells Fargo who participated in a 401(k)/Employee Stock Ownership Plan (the "Plan") established by Wells Fargo. ECF No. 183-4 at 6; ECF No. 184-20.[1] In a nutshell, an employee stock ownership plan ("ESOP") is "a type of ERISA plan that invests primarily in the stock of the employer creating the plan." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994). In a typical "leveraged ESOP" transaction, an ESOP takes out a loan and uses the proceeds of the loan to acquire employer stock. 8 West's Fed. Admin. Prac. § 10051 (July 2024 Update). The shares of the employer stock are then typically placed in a "suspense account" as collateral for the loan, and, as the loan is repaid by the employer, the shares are released from the suspense account and allocated to the individual account of plan participants. *Id.* § 10066. The allocation of employer stock to plan participants allows those participants to own part of the employer without purchasing shares directly.

---

[1] Undisputed evidence from the summary judgment record is cited only for factual background.

2

The Plan at issue here is a "leveraged KSOP," *see* ECF No. 172-2 at 93–96, which involves combining a leveraged ESOP with a 401(k) defined contribution retirement plan, *see* 8 West's Fed. Admin. Prac. § 10094 (July 2024 Update). Wells Fargo made annual ten-year "exempt loans" to the Plan with which the Plan purchased Wells Fargo convertible preferred stock. ECF No. 184-10 at 4; ECF No. 184-23. The preferred stock was held by the Plan in a separate suspense account as collateral for each exempt loan. *See* ECF No. 172-2 at 93–94. The Plan permitted the use of dividends from the preferred stock in the suspense account to pay down the exempt loans. ECF No. 172-2 at 95. As the Plan made payments on the exempt loans, a commensurate amount of preferred stock was released from the suspense account, with each share automatically converting into $1,000 worth of common stock. *See* ECF No. 184-4; ECF No. 184-10 at 4. That common stock was then allocated to Plan participants' accounts up to the 6% cap for employer matching contributions under the Plan and any profit-sharing contributions under the Plan. ECF No. 172-2 at 95. Therefore, the Plan contemplated that the common stock released to Plan participants' accounts would be used to offset Wells Fargo's required employer matching contributions and discretionary profit-sharing contributions.

Plaintiffs alleged that these transactions violated ERISA and brought suit on September 26, 2022, against Wells Fargo; GreatBanc, an independent fiduciary who reviewed these transactions, *see* ECF No. 173-1 at 137; ECF No. 173-2 at 149; and Sloan, Wells Fargo's CEO and sole member of the committee that approved the transactions, *see* ECF No. 173-2 at 34; ECF No. 1. Plaintiffs alleged that by using Plan assets (that is, the released common stock) to satisfy Wells Fargo's required employer matching contributions

3

and discretionary profit-sharing contributions, Defendants breached their fiduciary duties to Plan participants, violated ERISA's anti-inurement provision, and engaged in prohibited transactions under ERISA. ECF No. 49 ¶¶ 98–167. Plaintiffs also premised their claims, in part, on the theory that the Plan paid more than fair value for the preferred stock during the leveraged transaction. *See id.* ¶¶ 106–08, 120, 130–31, 140, 146, 156, 163.

Defendants moved to dismiss, ECF No. 88, which the Court denied, ECF No. 122. The Court concluded that Plaintiffs lacked Article III standing to pursue their claims based on the theory that the Plan overpaid for shares of the preferred stock. *See id.* at 7–10. However, the Court concluded that Plaintiffs could pursue their claims based on the theory that Wells Fargo improperly used the preferred stock dividends and released common stock to offset its contribution obligations under the Plan. *Id.* at 10–12; 14–24.

The parties proceeded through discovery, and Plaintiffs later filed an unopposed motion for class certification, ECF No. 153, which the Court granted, ECF No. 168. The parties then filed cross-motions for summary judgment. ECF Nos. 169, 179. While their motions were pending, the parties agreed to mediation with Robert Meyer of JAMS. ECF No. 214 ¶ 8. Although no settlement was reached at the mediation, the parties worked with Mediator Meyer over the following weeks to reach an agreement on the principal terms of a settlement and notified the Court of that resolution on August 15, 2025. *Id.* ¶ 9; ECF No. 207. The parties continued to negotiate settlement terms with the assistance of Mediator Meyer and eventually executed a settlement agreement on November 4, 2025. ECF No. 214 ¶¶ 8–10. Plaintiffs represent that, at all times, settlement negotiations were conducted at arm's length by experienced counsel who understood the strengths and

weaknesses of the claims and defenses in this matter and the risks of proceeding with continued litigation. *Id.* ¶ 10.

Under the settlement agreement, Wells Fargo will deposit $84,000,000 into a Qualified Settlement Fund, and following any deductions for attorneys' fees, costs, service awards, and administration costs, the remaining settlement funds will be distributed to class members. The distribution will be on a pro rata basis based on the total number of vested shares of Wells Fargo stock allocated to each class member during the class period for which the released common stock was used to fund a portion of Wells Fargo's employer contributions. ECF No. 214-1 at 3–4, 14–17; *see also* ECF No. 214-2 (proposed plan of allocation). Class members who no longer have an active account in the Plan will have the option to receive their settlement distribution by check or through a direct rollover to a tax-qualified retirement account. ECF No. 214-2 ¶¶ 19–22. Each class member will therefore receive a proportional share of the alleged losses arising from Wells Fargo's use of the released common stock to fund a portion of its employer contribution obligations. *Id.* ¶ 7. However, no funds will be issued to any class member who does not have an active account in the Plan if their individual allocation amount falls below a de minimis threshold of $10. *Id.* ¶ 8. Instead, the aggregate value of any de minimis recoveries will be allocated to other class members on a per capita basis. *Id.*

Plaintiffs moved for preliminary approval of the settlement, ECF No. 212, which the Court granted, ECF No. 219. The Court set a final approval hearing for March 17, 2026. *Id.* at 3. On February 2, 2026, Plaintiffs moved for attorneys' fees, costs, expenses, and service awards for the named Plaintiffs, ECF No. 220, and on February 24, 2026,

Plaintiffs moved for final approval of the settlement, ECF No. 234.  Plaintiffs represent that notice under the Class Action Fairness Act ("CAFA") was served on all relevant authorities no later than January 2, 2026.  ECF No. 241 ¶¶ 2, 7–8; ECF No. 241-2.  Plaintiffs also represent that on January 23, 2026, the Settlement Administrator sent appropriate notice of the settlement to 425,851 class members, with additional efforts made at providing notice to those class members whose initial notices were deemed undeliverable or unopened.  ECF No. 240 ¶¶ 7–9, 12.  Class Counsel also gave notice by posting the settlement agreement, plan of allocation, class notice, complaint, and other important filings and deadlines in this case on a publicly available website.  *Id.* ¶¶ 16–20.  The deadline for objections to be filed was February 25, 2026.  ECF No. 219 at 7.  The Court has received no objections to the settlement from any class members.  ECF No. 241 ¶ 9. Plaintiffs also present the statement of an independent fiduciary which has reviewed the settlement and has concluded that it is "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone."  ECF No. 237-1 at 4.

The Court held a final fairness hearing on March 17, 2026, at which Plaintiffs' counsel discussed why the settlement was fair, reasonable and adequate, and why Plaintiffs' motion for attorneys' fees, costs, expenses, and service awards should be granted.[2]  ECF No. 245.

---

[2]  One class member was present at the hearing.  The Court asked if she would like to be formally heard, and the class member declined.

## ANALYSIS

### I.    Final Approval of the Settlement

This Court has already granted class certification, ECF No. 168, and the Court finds that the notice program carried out by the parties satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause, and CAFA, ECF No. 240 ¶¶ 7–9, 12, 16–20; ECF No. 241 ¶¶ 2, 7–9; ECF No. 241-2.

Therefore, the only question left is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In assessing whether the proposed settlement is "fair, reasonable, and adequate," the Court considers the *Van Horn* factors: (1) the merits of Plaintiffs' case weighed against the terms of the settlement; (2) Defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). It is also appropriate for the Court to consider the factors enumerated in Rule 23(e)(2) along with the *Van Horn* factors. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860–61 (S.D. Iowa 2020); *Barclay v. iFIT Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *9 (D. Minn. Oct. 27, 2025). Under Rule 23(e)(2), courts consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). A settlement agreement is "preemptively valid." *Uponor*, 716 F.3d at 1063 (citation omitted).

7

a.    *Van Horn* Factors

i.    **Merits of Plaintiffs' Case vs. the Terms of the Settlement**

This factor, which is the "most important," *Van Horn*, 840 F.2d at 607, requires consideration of "Plaintiffs' likelihood of success in litigation" and "the range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9.

Plaintiffs' likelihood of ultimate success at trial was in doubt. "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Plaintiffs candidly recognize that their theory of liability under ERISA is novel and that recent case law relating to plan forfeitures seems to undermine their theory that using plan assets to offset employer matching contributions violates ERISA's commands. *See* ECF No. 222 at 19–20 (first citing *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 877–78 (D. Ariz. 2025); and then citing *Estay v. Ochsner Clinic Found.*, Civ. Action No. 25-507, 2025 WL 2644782, at *2–5 (E.D. La. Sept. 15, 2025)); ECF No. 236 at 24–25 (first citing *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 918–19, 923-29 (N.D. Cal. 2025); and then citing *Naylor v. BAE Sys., Inc.*, No. 1:24-cv-536 (AJT/WEF), 2024 WL 4112322, at *2–7, 10 (E.D. Va. Sept. 5, 2024)). Defendants also highlighted the unsettled plan forfeitures case law in their motion for summary judgment, *see* ECF No. 194 at 17–18, and offered other robust defenses to Plaintiffs' novel claims. Plaintiffs would have faced an uphill battle to distinguish the reasoning of the plan forfeitures cases from this case, and had the Court applied the reasoning of the plan forfeitures cases to this case, all of Plaintiffs' claims would have been

8

vulnerable to dismissal. And, even if Plaintiffs had prevailed at summary judgment or trial, there would be a very real risk of continued lengthy litigation. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 955, 962 (8th Cir. 2017) (vacating the judgment in an ERISA case filed eleven years prior and remanding for further proceedings for a second time). In contrast, the $84 million settlement—which Plaintiffs represent is "the largest-ever class action settlement of ERISA claims arising from an employee stock ownership plan," ECF No. 222 at 16—delivers a "real and substantial remedy" to class members now, "without the risk and delay inherent in prosecuting this matter through trial and appeal." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016).

Turning to the "range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9, Plaintiffs' damages expert tentatively calculated potential damages in this case ranging from approximately $11 million to $480 million, ECF No. 214 ¶ 6. Defendants would have also likely sought an offset from any damages award for their $132 million settlement with the U.S. Department of Labor in 2022; if the Court applied an offset, the potential recovery for class members would dip to between $0 and $348 million. *Id.* ¶ 7. Accordingly, the $84 million settlement falls well within the range of successful outcomes for Plaintiffs and "bears a reasonable relationship to the case's merits." *Morrison v. Entrust Corp.*, No. 23-cv-415 (ECT/ECW), 2024 WL 2207563, at *6 (D. Minn. May 14, 2024). That conclusion is strengthened by considering the opinion of the independent fiduciary, which reviewed the settlement and concluded that it is "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." ECF No. 237-1 at 4; *see Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18CV22, 2021 WL 424421,

at *2 (D. Neb. Feb. 8, 2021) (noting that an independent fiduciary had approved the settlement in determining that the settlement was fair, reasonable, and adequate).

### ii.      Defendants' Financial Condition

No party disputes Wells Fargo's ability to pay for its settlement obligations.  This factor is therefore neutral in the Court's analysis.  *See Swinton*, 454 F. Supp. 3d at 878–79 (finding this factor neutral when "[n]o one disputes whether Defendant is financially capable of either meeting its obligations under the Settlement or continuing this litigation"); *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017) (finding this factor neutral because it was undisputed that "Wells Fargo's financial condition was stable").

### iii.      Complexity and Expense of Further Litigation

As explained previously, ERISA is a "complex field that involves difficult and novel legal theories and often leads to lengthy litigation."  *Krueger*, 2015 WL 4246879, at *1. Counsel in ERISA class actions must therefore "be knowledgeable about this complex and developing area of law, aware of numerous merits and procedural pitfalls, willing to risk dismissal at any stage, and prepared to pursue many years of litigation." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020).  Indeed, since the filing of this lawsuit, the legal landscape has shifted under Plaintiffs' feet, as the plan forfeitures case law has eroded the legal underpinnings of Plaintiffs' novel theory of liability.  *See* ECF No. 236 at 24–25.  And had Plaintiffs made it past summary judgment, extensive expert discovery was likely, and a costly trial would likely last at least a week (if not longer) and would require testimony from numerous party, non-party, and expert witnesses on complex issues of ESOP administration.  ECF No. 236

at 27.  Avoiding these significant costs favors approving the settlement.  *See Huyer*, 847 F.3d at 939 (finding this factor weighed in favor of settlement approval when "proceeding to trial would be costly, extensive discovery was likely, [and] a trial would last ten days to two weeks" and would involve "presenting complex financial data" to the trier of fact); *see also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975) ("[C]lass actions place an enormous burden of costs and expense upon the parties . . . .").

### iv.      Objections to the Settlement

On January 23, 2026, the Settlement Administrator sent appropriate notice of the settlement to 425,851 class members, with additional efforts made at providing notice to those class members whose initial notices were deemed undeliverable or unopened.  ECF No. 240 ¶¶ 7–9, 12.  The Court has received no objections to the settlement, which strongly supports settlement approval.  *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080, 1083 (D. Minn. 2009) (finding this factor "strongly support[ed] settlement approval" when no objections were made by the more than 23,000 class members).

### b.      Rule 23(e)(2) Factors

Having found that the *Van Horn* factors weigh in favor of approving the parties' settlement, the Court also finds that the Rule 23(e)(2) factors support the parties' settlement.  As described in the Court's order granting class certification, *see* ECF No. 168 at 8–9, and as discussed below in evaluating Plaintiffs' requests for fees, costs, and service awards, the class representatives and Class Counsel adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  The parties also reached the settlement agreement after years of hard-fought litigation and extensive mediation before Mediator Meyer, providing for

arm's-length negotiation and avoiding any risk of collusion.  ECF No. 214 ¶¶ 8–10; *see* Fed. R. Civ. P. 23(e)(2)(B); *see also Barclay*, 2025 WL 3004039, at *13 (finding this factor weighed in favor of a settlement when the parties had negotiated at arm's length through a mediator); *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) (concluding that settlement was reached through arm's length negotiations and an absence of collusion given that the "adversarial process" of the litigation had been "vigorous during the course of the dispute, spanning several years and hundreds of court filings, with adversarial motions pending even at the time of settlement"), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).  As discussed above, settlement avoids the risks, additional costs, uncertainties, and delays of continued litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  The proposed method of distribution and processing claims is effective, and the notice was effectively delivered. *See* ECF No. 240 ¶¶ 7–9, 12; ECF No. 241 ¶¶ 2, 7–8; ECF No. 241-2; *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii). And the proposed plan of allocation treats class members equitably relative to each other, as class members will receive their proportional share of alleged losses arising from Wells Fargo's use of the released common stock to fund a portion of its employer contribution obligations.[3]  *See* ECF No. 214-1 at 3–4, 14–17; ECF No. 214-2 ¶ 7; *see also* Fed. R. Civ. P. 23(e)(2)(D).  Accordingly, with both the *Van Horn* and Rule 23(e)(2) factors weighing

---

[3]    Although no allocation will be made to class members whose payout would be less than $10, ECF No. 214-2 ¶ 8, the Court finds this exclusion reasonable, *see Zilhaver*, 646 F. Supp. 2d at 1080 (approving a similar exclusion).

in favor of approving the parties' settlement, the Court finds the settlement fair, reasonable, and adequate and grants it final approval.

## II.    Request for Attorneys' Fees

Plaintiffs also seek attorneys' fees pursuant to the "common-fund" doctrine. ECF No. 222 at 14. Under the "common-fund" doctrine, "class counsel is entitled to a reasonable fee drawn from the commonly-held fund created by a settlement for the benefit of a class." *Krueger*, 2015 WL 4246879, at *1 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Generally, the "reasonable fee" is calculated by awarding a percentage of the settlement fund as attorneys' fees. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, Plaintiffs seek $20,160,000 in attorneys' fees—24% of the $84,000,000 total settlement amount. ECF No. 222 at 13–14. To determine if that amount is reasonable, the Court weighs seven factors: (1) the benefit conferred on the class; (2) the risk to which Plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both Plaintiffs' and Defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010).

### a.    Benefit to the Class

Class Counsel's efforts have brought about a significant monetary recovery to the class—indeed, Plaintiffs represent, and Defendants do not contest, that the settlement is "the largest-ever class action settlement of ERISA claims arising from an employee stock

13

ownership plan." ECF No. 222 at 16. Each class member will receive a pro rata share of the $84 million common fund based on the class member's alleged injury they suffered by Wells Fargo's use of ESOP preferred stock dividends to offset its employer contributions. ECF No. 214-2 ¶¶ 7–8. Based on the range of possible outcomes for this case, an $84 million overall settlement represents a good deal for class members. Plaintiffs' damages expert tentatively calculated potential damages in this case from approximately $11 million to $480 million. ECF No. 214 ¶ 6. Defendants would have also likely sought an offset from any damages award for their $132 million settlement with the U.S. Department of Labor in 2022; if the Court applied an offset, the potential recovery for class members would dip to between $0 and $348 million. *Id.* ¶ 7. So, even assuming Plaintiffs would be awarded the maximum amount they sought, Plaintiffs have still recovered 17.5% of their potential damages in settling this case for $84 million. That reflects a substantial benefit to the class. *See Zilhaver*, 646 F. Supp. 2d at 1080, 1083 (awarding attorneys' fees and finding that a settlement amount of about 16.2% of plaintiffs' potential damages was a "sizable recovery for class members").

### b.   Risk for Class Counsel and Novelty of Case[4]

Class Counsel also took significant risk in litigating this case. As an initial matter, Class Counsel litigated this case on a contingency basis, meaning that they assumed an appreciable risk this case would "produce no fee." *Brissette v. Heckler*, 784 F.2d 864, 865–

---

[4]   Although the "risk to counsel" and "complexity and novelty of case" factors are distinct, because the analysis of these two factors overlap, the Court will address them together.

66 (8th Cir. 1986). Class Counsel assumed that risk while bringing novel claims in the already complex field of ERISA, which "involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger*, 2015 WL 4246879, at \*1. And even within the universe of ERISA litigation, claims involving ESOPs "are often cited as the most complex of ERISA cases." *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2021 WL 2327858, at \*4 (C.D. Cal. May 21, 2021). Indeed, Plaintiffs candidly recognize that their theory of liability is novel, and recent case law seems to cast doubt on that theory. *See* ECF No. 222 at 19–20 (first citing *Sievert*, 780 F. Supp. 3d at 877–78; and then citing *Estay*, 2025 WL 2644782, at \*2–5).

Given the complexity and novelty of Plaintiffs' claims, Plaintiffs stood a very real risk of "recovering nothing in this litigation." *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), 2025 WL 3653652, at \*3 (D. Minn. Dec. 17, 2025). And even if Plaintiffs prevailed before this Court, lengthy appeals (and a potential reversal) could have no doubt followed. *See Krueger*, 2015 WL 4246879, at \*1 (describing ERISA as a field that "often leads to lengthy litigation"). These factors therefore weigh in favor of Class Counsel's fee award request.

### c.    Skill of Attorneys

Counsel in ERISA class actions "must be knowledgeable about this complex and developing area of law, aware of numerous merits and procedural pitfalls, willing to risk dismissal at any stage, and prepared to pursue many years of litigation." *Bekker*, 504 F. Supp. 3d at 270. All counsel in this case have proven themselves to be competent and vigorous advocates for their clients' interests. Class Counsel and their firms—Nichols

15

Kaster; Bailey & Glasser; and Feinberg, Jackson, Worthman & Wasow—are highly experienced in litigating ERISA class actions. *See* ECF No. 156 ¶¶ 4–6, 11–12; ECF No. 156-2; ECF No. 157 ¶¶ 3–6; ECF No. 157-1; ECF No. 158 ¶¶ 4–7; ECF No. 158-1. This Court recognized as much when granting class certification. *See* ECF No. 168 at 8–9. And Defendants' counsel from Faegre Drinker Biddle & Reath and Proskauer Rose are part of "well-regarded defense firms with their own extensive experience handling similar matters." *Zilhaver*, 646 F. Supp. 2d at 1084. Defendants' counsel have competently and zealously defended their clients' interests in this litigation through motion practice and discovery. *See* ECF No. 223 ¶¶ 21–27. This factor weighs in Class Counsel's favor.

> **d.     Time and Labor Involved**

Class Counsel claim 3,894 hours worked on this case over the past four years. *See* ECF No. 223 ¶ 35. Counsel "moved the case along expeditiously," *In re Xcel Energy, Inc., Sec. Derivative, & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005), and there is no evidence that Class Counsel's claimed work was duplicative or unnecessary. Indeed, spending less than 4,000 hours over four years to achieve an over $84 million settlement— the largest ESOP-related settlement in an ERISA case to date—seems like a fairly efficient use of attorney resources. *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1062–63 (noting that 5,453.5 hours were spent to achieve a $16.5 million settlement). The Court's lodestar cross-check will further account for Class Counsel's time and labor expended.

> **e.     Class Reaction**

Pursuant to the Court's preliminary order granting approval, the settlement administrator sent notices to more than 425,000 potential class members. ECF No. 240

16

¶¶ 7–9, 12.  The notices and settlement website advised potential class members that Class Counsel would apply for an attorney fee award of up to 25% of the settlement, that the fees would be deducted from the settlement fund, and that members of the class could object to the requested fee.  *See* ECF Nos. 214-4; 214-5.  No class members have objected to Class Counsel's fee request.

### f. Comparison to Similar Cases

Class Counsel's request for a 24% fee award is well in line with awards in similar ERISA class action cases.  "[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."  *Xcel Energy*, 364 F. Supp. 2d at 998; *see Krueger*, 2015 WL 4246879, at *2 (granting 33.3% fee award); *Tussey v. ABB, Inc.*, No. 06-cv-04305-NKL, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) (same).

In sum, each Rule 23(e)(2) factor weighs in favor of Class Counsel's requested fee award.

### g. Lodestar Cross-Check

Although not necessary, courts may apply a lodestar "cross-check[]" to assess the reasonableness of the fee calculated as a percentage of the fund.  *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017).  The lodestar methodology calculates a reasonable fee by multiplying a reasonable hourly rate of compensation by the hours expended by an attorney. *See id.*  Here, Class Counsel expended a total of 3,894 hours.  ECF No. 223 ¶ 35.  As for rates of compensation, senior Class Counsel charge between $1,000 and $1,375 per hour, associate Class Counsel charge between $525 and $750 per hour, and legal support staff

charge between $325 and $400 per hour. *Id.* ¶ 18; ECF No. 224-1; ECF No. 225 ¶ 18. Although perhaps slightly elevated hourly rates for litigation in this District, the claimed hourly rates of these professionals are generally in line for attorneys involved in complex, national class-action litigation. *See Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049 (JRT/DJF), ECF No. 241-2 ¶ 63; ECF No. 249 at 6–7 (D. Minn.) (finding hourly rates of $1,000 to $1,400 for partners, $500 to $725 for associates, and $325 for legal support staff to be "reasonable and consistent with rates" in ERISA class-action litigation); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), ECF No. 3141-1; ECF No. 3255 at 10 (D. Minn.) (finding hourly rates of $850 to $1,150 for partners, $625 for associates, and $300 to $310 for legal support staff to be "fair and reasonable compensation" in an antitrust class action). This finding is supported by declarations submitted by other attorneys experienced in ERISA class actions, who affirm that Class Counsel's hourly rates are reasonable. ECF No. 229 ¶ 10; ECF No. 230 ¶ 21; ECF No. 231 ¶ 14.

Multiplying the hours expended by the hourly rates leads to a lodestar amount of $4,366,995. ECF No. 223 ¶ 35. Based on this lodestar, Class Counsel's requested fee of $20,160,000 leads to a multiplier of 4.6 from the lodestar. This multiplier is within the range of reasonableness for complex class action lawsuits. *See Xcel Energy*, 364 F. Supp. 2d at 1002 (awarding a fee representing a 4.7 multiplier in a securities class action); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (awarding a fee representing a 5.61 multiplier in multi-district securities class-action litigation). To the extent that this multiplier is on the higher side, the Court believes that the multiplier here is justified based on "the novelty

and uncertainty of the claims, the skill required by counsel to perform the work properly, . . . the experience and ability of the attorneys, and significantly, the large amount involved and excellent result achieved." *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (citation omitted) (affirming fee award representing a 5.3 multiplier under such circumstances). There is no indication here that the fee award is overly generous or a windfall to Class Counsel.

Accordingly, the Court grants attorneys' fees to Class Counsel in the amount of $20,160,000.

## III.    Request for Costs

"[C]ounsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3. Class Counsel are seeking $173,995.58 in case-related expenses for these types of costs, including travel, document management, courier and mailing fees, court fees, expert fees, transcripts, and computerized research. ECF No. 223 ¶ 30; ECF No. 224 ¶ 18; ECF No. 225 ¶ 20. The Court is satisfied from its review of Class Counsel's declarations that each of the expense categories for which reimbursement is sought is appropriate for payment from a common fund. And because Class Counsel represented Plaintiffs on a contingent-fee basis, Class Counsel "had a strong incentive to keep these expenses at a reasonable level." *Krueger*, 2015 WL 4246879, at *3. The Court therefore awards Class Counsel $173,995.58 for its costs and expenses.

## IV.    Service Awards

Plaintiffs finally request a $25,000 service award to each of the three class representatives.  ECF No. 222 at 33.  "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."  *Caligiuri*, 855 F.3d at 867 (citation omitted) (internal quotation marks omitted).  In determining whether to grant a service award, courts consider the actions that the plaintiffs took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiffs expended in pursuing litigation.  *See U.S. Bancorp*, 291 F.3d at 1038.

Here, each of these factors weighs in favor of granting service awards.  Each Plaintiff explains that they have been involved in this litigation since its outset, and that they assisted the progression of this case by reviewing drafts of pleadings, responding to four sets of written discovery, meeting with Class Counsel to prepare for depositions, sitting for depositions, and meeting with Class Counsel to prepare for mediation.  ECF No. 226 ¶¶ 5–9; ECF No. 227 ¶¶ 5–9; ECF No. 228 ¶¶ 5–9.  These efforts are similar to actions in cases where courts have deemed service awards appropriate.  *See Caligiuri*, 855 F.3d at 867 (affirming service awards when plaintiffs "participated in interviews, assisted with discovery, were deposed, participated in conferences, and met with attorneys throughout the litigation process that lasted five years"); *Xcel Energy*, 364 F. Supp. 2d at 1003 (awarding service awards when plaintiffs "reviewed pleadings, conferred with counsel, provided information about the plan, responded to discovery, and reviewed and consented to the settlement").

Service awards are particularly warranted in this case considering the degree to which the class has benefitted from those actions. By stepping up to bring their claims, Plaintiffs played no small part in securing the largest-ever ESOP-related settlement in an ERISA case, a settlement which will benefit more than 425,000 class members. *See U.S. Bancorp*, 291 F.3d at 1038. In recognition of their efforts, the Court grants a service award of $25,000 each to Aryne Randall, Peter Morrissey, and Scott Kuhn.

## V.       Request for Settlement Administration Expenses

The settlement agreement provides that "[a]ll Settlement Administration Expenses shall be paid from the Qualified Settlement Fund." ECF No. 214-1 at 6. Class Counsel selected Simpluris, a professional class action settlement administration firm, to serve as the settlement administrator because its proposal was the most cost-effective option that Class Counsel received out of four proposals submitted by settlement administration firms. ECF No. 214 ¶¶ 17–18. In its preliminary approval order, the Court approved the retention of Simpluris as the settlement administrator. ECF No. 219 at 4. Simpluris estimates that its settlement administration services will cost between $408,988.25 and $418,237, with the costs for settlement administration work completed to date at $260,681.25, and the estimate for future settlement administration work between $148,307 and $157,555.75. ECF No. 240 ¶ 23. The Court finds these expenses reasonable and, given the size of the class and the complexity of allocations, necessary to effectuate the settlement. *See In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), 2023 WL 11892727, at *1 (D. Minn. Aug. 25, 2023) (approving nearly $643,000 in settlement administrator expenses as "reasonably incurred in the ordinary course of administering" the settlement and

"necessary given the nature and scope of the case"). The Court therefore authorizes the payment of $260,681.25 from the Qualified Settlement Fund for settlement administration expenses already incurred and the retention of $157,555.75 in the Qualified Settlement Fund to pay future settlement administration expenses.[5]

**CONCLUSION**

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 234) is **GRANTED**. The parties are directed to take the necessary steps to effectuate the terms of the settlement agreement (ECF No. 214-1) and the plan of allocation (ECF No. 214-2).

2.  Final approval of the methods and forms of notice provided to class members and pursuant to CAFA is **GRANTED**.

3.  Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (ECF No. 220) is **GRANTED** as follows:

    a.  Class Counsel's request for an award of $20,160,000 in attorneys' fees is approved.

    b.  Class Counsel's request for litigation expenses in the amount of $173,995.58 is approved.

    c.  Service awards of $25,000 each are granted to Class Representatives Aryne Randall, Peter Morrissey, and Scott Kuhn.

    d.  The Court authorizes payment from the Qualified Settlement Fund in the amount of $260,681.25 for settlement administration expenses already incurred and the retention of $157,555.75 in the Qualified Settlement Fund to pay future settlement administration expenses.

---

[5]    Plaintiffs' counsel represented during the final fairness hearing that if any additional funds remain after future settlement administration expenses are paid, none of the funds would revert to Defendants.

22

4.      This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 20, 2026                     _s/Laura M. Provinzino_
                                          Laura M. Provinzino
                                          United States District Judge